# The Chicago, Burlington & Quincy R. R. Co.
## v.
## Calvin Boger.

1. RAILROADS—EXPULSION OF PASSENGER—EVIDENCE.—On the trial, appellant offered testimony that on previous occasions the train had been boarded in that locality by roughs and confidence men who had attacked the brakeman, in explanation of the reason why the brakeman was armed with the billet with which appellee was struck. *Held*, that the evidence should have been admitted. Appellee was claiming exemplary damages of the company for the willful misconduct of one of its servants, and in mitigation of such damages it was allowable to show the reason why the brakeman became armed with this weapon.

2. EXPELLING FROM TRAIN BETWEEN STATIONS.—The rule that railroad companies have no right to expel a passenger, except at a regular station, though correct as a general rule of law, is not applicable in all cases. Appellee had been once thrust off the train at a regular station, and as the cars were moving out from that station, he again leaped on to the train. Under such circumstances he was not in all respects entitled to the same consideration as if he had not been once expelled for neglecting to comply with the rules of the company. He occupied quite a different position from that of a person who might enter the cars under a mistaken notion that he had a right to do so.

3. FORCE USED IN EJECTING—EXEMPLARY DAMAGES — INSTRUCTIONS. —An instruction to the effect that if the jury find that the plaintiff was put off the train at a place not a regular station, by the willful and wrongful act of the defendant, they may consider, in fixing the amount of damages, not only the annoyance, vexation, delay and risk to which plaintiff was subjected, but also the indignity done him by the mere fact of expulsion, and that it would make no difference whether the brakeman acted in good faith or not,

if he acted willfully, is erroneous. Good faith means the opposite of willful and criminal conduct, and the act complained of must partake of a wanton or criminal nature, else the amount sought to be recovered must be confined to actual compensation, and damages for the indignity suffered cannot be recovered.

4. Right of company to establish rules—Authority of its servants.—A railroad company has the right to establish rules requiring passengers to produce their tickets before entering the cars, and it may direct the brakemen of the train to require observance of these rules.

5. Instruction to disregard evidence—"Falsus in uno, falsus in omnibus."—The maxim "*falsus in uno, falsus in omnibus*" should only be applied in cases where a witness *willfully* and knowingly gives false testimony, and an instruction based upon that maxim which ignores the ·fact whether the false statement was intentional or not on the part of the witness, is erroneous.

Appeal from the City Court of Aurora ; the Hon. Frank M. Annis, Judge, presiding.

Mr. Charles Wheaton, for appellant; contending against the instruction given, that plaintiff might recover damages for the indignity suffered in being expelled ·from the train, cited 2 Greenl'f Ev. § 272; Reed v. Bias, 8 Watts & Serg. 189; Conrad v. Pacific Ins. Co. 6 Pet. 273.

As to error in the instruction to disregard the whole testimony of the witness Farnham, if the jury should find that he had sworn falsely in relation to any material fact: Chittenden v. Evans, 41 Ill. 251; C. & A.·R. R. Co. v. Buttolf, 66 Ill. 347; Crabtree v. Hagenbaugh, 25 Ill. 233; Pollard v. The People, 69 Ill. 148; Brennan v. The People, 15 Ill. 511; Homes v. Hale, 71 Ill. 552; Peak v. The People, 76 Ill. 289.

That requiring purchase of a ticket and showing it before entering the cars, is a reasonable rule, and where the act of ejection is done in good faith, no vindictive damages should be allowed: T. P. & W. R. R. Co. v. Patterson, 63 Ill. 304; C. & A. R. R. Co. v. Flagg, 43 Ill. 364; Pullman Palace Car Co. v. Reed, 75 Ill. 125; B. & O. R. R. Co. v. Blocher, 27 Md. 277; City of Decatur v. Fisher, 53 Ill. 407.

Messrs. Little & White, for appellee; that the jury were warranted in finding punitive damages, cited Johnson v. Camp,

51 Ill. 219; Jasper et al. v. Purnell, 67 Ill. 358; C. & A. R. R. Co. v. Flagg, 43 Ill. 364; Atlantic & Great Western R'y Co. v. Dunn, 2 Am. Rep. 382; Palmer v. Railroad, 16 Am. Rep. 750; 2 Am. Rep. 39; 16 Am. Rep. 404.

SIBLEY, J.—The appellee brought this suit in the City Court of Aurora to recover damages of the Chicago, Burlington and Quincy Railroad Company, for having been put off from one of the company's fast through trains running from Chicago to Omaha. That he was expelled from the cars at the Great Eastern crossing in Chicago, there is no dispute. But the question on the trial in the City Court was as to the right and manner of expulsion. Only two witnesses testified respecting the main facts—the plaintiff in the cause and the brakeman on the train that expelled him. As usual in such cases, they differ widely in their statements as to what took place at the time. Boger, the appellee, testified that he walked slowly up State street, in Chicago, to where the train crossed the street, and hopped on to one of the cars, and rode over the bridge, when that " specimen of a man " (alluding to the brakeman, in not very courteous terms,) " came up and said, ' Where are you going? ' and asked if I had a ticket. I said that I had not. He then inquired if I had any money, and I told him that I had money to pay my fare wherever I went. It was near the Great Eastern crossing. He then told me that I must get off; they had had enough of "dead beats on that train." When the train stopped at that station the witness got off and started for the ticket office to procure a ticket, but for want of time did not get one, and when the train moved out got on to it again, and while on the steps of one of the cars the brakeman repeated the order to "get off," accompanying it with some rough and abusive language. Upon his refusing to comply with the request, the brakeman struck him with a slung shot and kicked him several times; that he took hold of the brakeman's foot, having grabbed him after being struck, and would have pulled the brakeman off the train if he could, but was himself kicked from the train while it was moving at a rate of speed from eight to ten miles an hour.

Farnham, the brakeman, testified that the appellee jumped on the train near the rear car, as it was crossing State street. Witness then asked him where he was going; he answered that he was going West; inquired if he had a ticket; he replied that he had not, and had no money. Witness then told him that he must get off at the next stopping place. As the train stopped at the Great Eastern crossing, a regular station of the company's road, appellee got off. But when the train started to move out he jumped back on, saying "damned if he was not going further than that." Witness again told him that he must get off, and he said that he would not get off. "I told him that I would help him off. I took him by the collar, he grabbed me by the arm. Seeing that he was going to resist me, I kicked him twice. At the time he jumped off he pulled me to the bottom of the steps. He ran along side of the train 30 or 40 feet trying to pull me off from it. To save myself from being pulled off, I struck him with a billy, it is about six inches long and has a chunk of lead in it. He soon let go and fell to the ground."

The first error complained of which we propose to notice, is that of the refusal of the Court to permit the witness Farnham to explain the reason why he carried the billy or slung shot on that occasion. The appellant offered to prove by the witness that a short time before he had had trouble with roughs and confidence men jumping on the train as it was passing out of the city, where he had been attacked by them, and that he carried the billy for his personal protection against any future assault. We think this evidence should have been admitted to the jury. The plaintiff was claiming exemplary damages of the railroad company for the willful misconduct of one of its brakemen. Among the assumed causes was the fact that the brakeman had a billy and made use of it in expelling the appellee from the train. In mitigation of such damages it was allowable for the company to prove the reason why the brakeman became armed with this weapon. If he had procured it for the express purpose of using it upon the appellee, the malice of the act might be considered more apparent than if he was simply carrying it for another and different purpose.

The first instruction given by the Court below for the plaintiff, which informed the jury that the railroad company had no right to expel the appellee from its train except at a regular station, announced a rule of law generally correct, but was not entirely applicable to the evidence in the case. The proof showed the Great Eastern crossing was a regular station of the company, and that appellee was there put off by the brakeman because he had no ticket, and for the further reason the brakeman says he denied having any money to pay his fare.

Now if, as both parties state, he again jumped on the train as it was moving out of the station, knowing that by the rules of the company he had no right to enter its cars without having first procured a ticket, was he in all respects entitled to the same consideration as if he had not been once expelled for neglecting to comply with them? Not that he could be thrust off while the train was in motion, or more force used in expelling him the second time than was necessary to accomplish the purpose. But the proposition is, should he in such case be carried to the next station, or must the train back up to the place where the expulsion occurred before he could again be put off. If this is the law, how easy would it be for an evil-disposed person to pass from place to place on a train of cars until in this way he arrived at his destination, or to prevent the train from proceeding at all by causing it to back up to the station where he had been once put off every time he might be disposed to repeat the experiment. We do not understand the law to be settled in this way. It would be allowing a party to take advantage of his own wrongful act to obtain a recovery in such case simply for being expelled at a place elsewhere than at a regular station. If the rule of the company was a reasonable one, and appellee, after having once been put off the train for its nonobservance, still persisted in a willful attempt to violate it by again jumping on, he certainly occupied quite a different relation to the railroad company from that of a person who might enter its cars, upon a train, under a mistaken notion that he had a perfect right to do so.

While these great corporations which to a large extent are

controlling the commerce and the travel of the country, and therefore should be held to a strict compliance with the law, yet there are also corresponding rights on their part to be observed by individuals, that if courts and juries fail to recognize, our system of jurisprudence will soon cease to command the respect of every thoughtful and unprejudiced mind.

The 4th instruction given by the Court for the appellee was as follows :

IV. "The jury are instructed that if they believe from the evidence, plaintiff was put off the said car of the defendant at a place not a regular station, or between stations, by the willful and wrongful act of the defendant, then the jury, in fixing the amount of damages, may consider not only the annoyance, vexation, delay and risk to which the plaintiff was subjected, if any, shown by the proof, but also the indignity done him by the mere fact of expulsion, and it would make no difference whether the said brakeman acted in good faith or not, if he acted willfully."

This instruction informed the jury that if they found the plaintiff was put off the defendant's train, at a place other than a regular station, then it would be proper for them to assess damages against the railroad company, not only for the annoyance and vexation, but also for any indignity done the plaintiff, by reason of the expulsion, whether the brakeman acted in *good faith* or not, if he acted willfully. In the case of the T. P & W. R. R. Co. v Patterson, 43 Ill. 304, where the plaintiff, had been put off the defendant's cars elsewhere than at a regular station, the Court says: "The act complained of must partake of a criminal or wanton nature, else the amount sought to be recovered must be confined to compensation." In that case the plaintiff Patterson was ejected from the cars in good faith by the conductor of the train, at a place other than a regular station, for the reason that he had failed to procure a ticket before entering according to the regulations of the R. R. Company, and it was there held he could only be compensated for any actual damages that he may have sustained by the expulsion, and numerous authorities are referred to in support of the rule of law.

That the railroad company had a right to establish the rule requiring passengers to produce their tickets before entering the cars, is not to be disputed and that the brakeman in this case was directed by the officers of the company to require this rule to be enforced, stands uncontradicted by the evidence.

Still the Court said to the jury that although acting upon these instructions in perfect *good faith*, yet if willfully, that is, with an obstinate determination to carry into effect his directions, then the company was liable to pay for the act, if wrongful, more than a fair compensation for the injury sustained.

*Good faith* means entirely the opposite to wanton and criminal conduct; then in such case according to the doctrine in the T. P. & W. R. R. Co. v. Patterson, no exemplary damages could be recovered.

If at the place where Boger jumped on to the train, the brakeman had previously (as was offered to be proven) been troubled with roughs and confidence men trying to steal a ride, and he sincerely believed this negro who had been once put off at a regular station, returning again with an oath that he was "going further" (which remark is not denied), was one of that class of persons, acted in good faith in forcibly ejecting him from the train, is the company to be punished by exemplary damages for the act? The proposition needs only to be stated, to render a refutation of it quite unnecessary.

The fifth instruction given for the plaintiff was clearly erroneous, in telling the jury that if they believe the witness, Farnham, had sworn falsely to any matter material in the case, the jury might disregard his testimony entirely, except where it was corroborated by other evidence in the case. It completely ignored the fact whether such false statement was intentional or not on the part of the witness. If the rule was not sufficiently settled that a mere mistake on the part of a witness in his testimony, should not invalidate his whole evidence, as to require any discussion respecting it, a single quotation from the case of the City of Chicago v. Smith, 48 Ill. 108, where it is said: " the maxim *falsus in uno, falsus in omnibus*, should only be applied in cases where a witness

willfully and knowingly gives false testimony," is quite enough to dispose of the question.

We discover no reason for the court's modification of the defendant's instructions one and two, by adding *when the* conductor *should call for the fare.* It was competent for the railroad company to adopt the rule that no one could enter its cars on this class of trains without first exhibiting a ticket, and it had the right to empower the brakeman to see that this rule was observed, and to execute it in a reasonable manner without consulting the conductor of the train.

They both received their authority from the same source, and either might, in compliance with the orders of their principal, act independent of the other. As is shown by the evidence in this case, the brakeman was directed by the division superintendent. Hence, no reason is perceived why the brakeman should wait for the conductor before executing his orders.

Whether this regulation had been sufficiently made known to require the plaintiff, without notice, to observe it, was a question of fact for the jury to determine; and in that respect it was proper to have allowed the witness, Farnham, to answer the question as to what had been the usage of the company in regard to requiring passengers to show their tickets before entering the cars.

The judgment will be reversed, and the cause remanded for a new trial.

Judgment reversed.