TEXAS & PACIFIC RAILWAY COMPANY v. N. M. DENNIS.

No. 217.

1. **Railway Company— Excursion Tickets.**—A town lot company extensively advertised an auction sale of lots in a distant city, and a railway company placed excursion tickets to the city and return in the hands of its agents for sale, good for a certain limited time and at reduced rates. *Held,* that a purchaser of one of such tickets who used all diligence after the sale to make the return trip, could not be lawfully expelled from one of the railway company's trains, although the limited time had expired.

2. **Same—Limitation of Time.**—Where a railway company offers for sale excursion tickets, good for a limited time, over its own and connecting lines, to

induce purchasers thereof to visit a distant place for a specific purpose, a purchaser has the right to presume, without further inquiry, that the time limited is sufficient for the purpose.

**3. Same — Conductor Must Look Beyond Ticket.**—The conductor had no more right to look to the face of the ticket alone, in expelling the purchaser from the train, than the principal for whom he was acting would have had.

**4. Same—Right of Passenger.**—A passenger is under no obligation, in order to avoid wrongful expulsion from a train, to pay an extra fare demanded and then sue to recover it back.

**5. Same — Excessive Verdict for Damages — Remittitur.**—A passenger was wrongfully expelled from a railway train by the conductor, who was acting in good faith, for refusal to pay an extra fare. He was a man of mature years, and was put off without violence, in the daytime, and at a point about nine miles from his destination. *Held*, that a verdict for $500 damages was excessive, necessitating a reversal unless a remittitur of $250 thereof should be duly filed.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

*B. G. Bidwell*, for appellant.—1. It is the duty of a person about to take passage on a railway train to inform himself when, where, and how he can go and stop; and if he makes a mistake, not induced by the railway company, against which ordinary care in this respect would have protected him, he has no remedy against the company for the consequences. Beauchamp v. Railway, 56 Texas, 239; 21 Am. and Eng. Ry. Cases, 279.

2. As between the plaintiff and the conductor on defendant's train who ejected him, the ticket presented by the plaintiff is and was the conclusive evidence of plaintiff's right to ride. Railway v. Ford, 53 Texas, 371; Frederick v. Railway, 37 Mich., 342; 18 Am. and Eng. Ry. Cases, 336; 26 Am. Rep., 531; 15 Am. Rep., 419.

3. The plaintiff, who had purchased a ticket limited as to the time within which it was to be used, was bound by its terms, and he could not ride on it after it expired; as he attempted to do so, he was rightfully ejected, provided that during the life of the ticket, defendant had run its trains over its road on the regular and usual time for running them. 16 S. W. Rep., 177; 132 U. S., 146; 18 Am. and Eng. Ry. Cases, 310, 313; 67 Ill., 390; 31 Barb., 556.

4. The plaintiff can not complain of an indignity which he wrongfully invites and provokes. 3 Am. and Eng. Ry. Cases, 340; 15 Am. Rep., 419; 15 Fed. Rep., 57; 39 Fed. Rep., 904; 46 Fed. Rep., 734; 112 Ill., 295; 68 Ill., 499; 118 Mass., 228.

5. If the conductor who ejected plaintiff from defendant's train had a reasonable ground to dispute the right of the plaintiff to ride on the ticket he offered, and in good faith did so, and the plaintiff was able to pay the fare demanded of him, it was his duty to do so, and sue for breach

of contract to carry him.    15 Fed. Rep., 419; 46 Fed. Rep., 734; 30 Fed. Rep., 904; 15 Am. Rep., 419.

*Lanham & Stephens*, for appellee.—1. Appellant's action in offering for sale a special round trip excursion ticket to Seymour, to enable persons to attend a public sale of town lots at Seymour on May 1, and in placing on the face of appellee's ticket the limitation that the ticket was not good after May 2, induced appellee, as it would any other person, and as it did several other persons of ordinary prudence, to believe that the trip could be made within that time, and hence relieved him of making any inquiry as to the railway connections. he being misled by appellant, and not being presumed to know the company's regulations.    That there is no duty to inquire where purchaser of ticket is misled by carrier, is implied in the authorities cited by appellant.    See also, Hufford v. Railway, 64 Mich., 631; 64 Md., 63; Railway v. Winters, 12 Sup. Ct. Rep., 356.

2. An unreasonable limitation in a ticket is void; and where the condition is impossible of performance, it is unreasonable.    2 Wood's Ry. Law, 1403.

3 The circumstances under which a ticket is bought, and fraud in written contract, may be shown by oral testimony.    Ranger v. Hearne, 41 Texas, 258; Railway v. Winters, 12 U. S. Sup. Ct. Rep., 356; Hufford v. Railway, 64 Mich., 631; 64 Md., 63; 2 Whart. on Ev., note 3 to sec. 927; Wood's Field on Corp., 436.

4. Where a party does all that he is required to do under the terms of a contract into which he has entered, and is only prevented from reaping the benefit of such contract by the fault or wrongful act of the other party to it, the law gives him a remedy against the other party for such breach of contract; and a railroad company can not make rules to violate its own contracts.    Railway v. Winters, 12 U. S. Sup. Ct. Rep., 356; 64 Md., 63; 64 Mich., 631; Railway v. Mackie, 37 Am. and Eng. Ry. Cases, 94; Railway v. Rogers, 38 Ind., 116; Railway v. Bray, 125 Ind., 229.

5. Appellee can not be deprived of his legal rights by the good faith of appellant's conductor; and a passenger who refuses to pay fare unlawfully demanded may recover for the indignity of expulsion, though he was able to pay his fare.    Railway v. Mackie, 37 Am. and Eng. Ry. Cases, 94; Railway v. Bray, 125 Ind., 229; Railway v. Connell, 112 Ill., 304.

6. Appellee, being 62 years old, a reputable citizen, was wrongfully put off the train, without fault on his part, in the presence of many respectable fellow passengers, and according to his testimony, in an unnecessarily rough and domineering manner, which indignity caused him great mortification and distress of mind, as well as bodily inconvenience and

expense. The verdict was not excessive. 18 S. W. Rep., 657; 66 Texas, 530; 68 Texas, 617.

HEAD, Associate Justice.—Prior to April 29, 1891, the following circular was extensively distributed and advertised in the papers in North Texas, including Weatherford, to-wit:

" Round trip excursion from Fort Worth to Seymour. Train leaves Union Depot, 9 a. m., Thursday, April 30, and returns May 2, spending the entire day, May 1, in Seymour. $2 the round trip from Fort Worth and all points up to Wichita Falls. $1 for round trip from Wichita Falls and Iowa Park. One and one-third fare will be sold on Texas & Pacific Railroad for round trip. First opportunity to buy property at public sale. Grand excursion and barbecue April 30, from Fort Worth to Seymour, Baylor County, $2. Round trip, good for return May 2. Best chance ever offered to see the glorious Panhandle country in her robes of green. Rates arranged at hotels for guests at $1 per day. Don't forget the day, April 30, 9 a. m., from Fort Worth. L. & H. Blum's Riverside Addition, 200 feet above the court house square. The Oak Cliff of Seymour. Five hundred lots will be auctioned off on the grounds. Terms of sale—under $50, cash; over $50, one-third cash, balance in one and two years."

The record does not disclose that appellant had anything to do with the distribution of these circulars or advertisements, but on April 28 and 29 it placed on sale at Weatherford round trip tickets from there to Seymour for $3.25, which was a low excursion rate, being much less than the regular fare, but the record does not disclose whether it was the exact rate advertised as above or not.

These tickets contained printed conditions limiting their use to May 2; also stipulating that they would "not be good for return passage unless the holder identifies himself as the original purchaser to the satisfaction of the authorized agent of the Denver, Texas & Fort Worth Railway (Panhandle Route) at point between punch marks, on or before ——, 188–; and when officially signed and dated in ink, and duly stamped by said agent, this ticket shall then be good only —— days after such date."

On April 29 appellee purchased one of these tickets at Weatherford from appellant's agent, paying $3.25 therefor, and a few moments thereafter entered one of its trains and proceeded to Seymour to attend the sale advertised as aforesaid. On May 2 he presented his ticket to the proper agent at Seymour and had it stamped for return passage, and started on his return trip in the first train that left Seymour after the conclusion of the sale on the 1st, but when he reached Fort Worth, the afternoon of the 2nd, he was compelled to delay his journey until the morning of the 3rd, because there was no train to Weatherford over appellant's road until that time. In fact, at the time appellant sold the

ticket the different trains did not so connect as to make it possible for
appellee to attend the sale at Seymour on the 1st and reach Weatherford
on the 2nd, but appellee did not know this until he reached Fort Worth
·on his return.

On the morning of the 3rd appellée entered the cars of appellant at.
Fort Worth and insisted upon riding to Weatherford upon this ticket,
after explaining the facts to the conductor; but after considerable par-
leying and telegraphing by the conductor to the superintendent of appel-
lant, the conductor forced appellee to leave the train about nine miles.
before he reached Weatherford, from which place he was compelled to
ride in a wagon, during the heat of the day, to his destination.   The
conductor, in compelling appellee to leave the car, exhibited considerable
firmness in the presence of a number of passengers, whose attention was.
thereby attracted, but no more than was reasonably necessary to enforce
obedience to his requirements, and if appellee was wrongfully on the
train, he would not have a cause for action on account of excessive force
used by the conductor in expelling him.

The only objection urged by the conductor to appellee's ticket was the
expiration of the time to which it was limited.   To go from Weatherford
to Seymour, as called for in this ticket, it was necessary to go over ap-
pellant's road to Fort Worth, and from there to Wichita Falls over the
Denver, Texas & Fort Worth Railway, and from there to Seymour over
the Wichita Valley Railway; but it would seem from the record that the
road from Wichita Falls to Seymour was treated as a part of the Denver,
Texas & Fort Worth.   At least the ticket issued by appellant called for
it to be stamped at Seymour by the agent of said last named road.

·Appellee instituted this suit to recover damages for his alleged wrong-
ful expulsion from the train by appellant, and a trial before a jury re-
sulted in a verdict and judgment in his favor for $500, from which this.
appeal is prosecuted.

*Opinion.*—It is well settled, that a railroad has the right to limit the
time within which a ticket it sells at a reduced rate must be used; but it
is equally well settled, that such limitation must be reasonable.   This
question is well considered in an opinion rendered by Chief Justice Fisher,
of the Court of Civil Appeals for the Third Supreme Judicial District of
this State, in the case of Railway v. Wright, 2 Texas Civil Appeals, 463.
Also, see Railway v. Looney, 85 Texas, 158; 2 Wood's Railway Law,
1403, 1404.

This question of reasonable time has ordinarily arisen in cases involving
the time necessary to make the contemplated trip, without reference to
the business in which the passenger is engaged; but we believe that when
we take into consideration the fact that these excursions are the source of
much revenue to the carriers, as evidenced by the zeal with which they

seek to encourage them, it will not be extending the principle too far to hold, that where the carrier seeks to induce numbers of passengers to go upon an excursion of this kind, by offering to them special rates, it should allow them a reasonable time in which to accomplish the purpose of the journey, and that in the absence of knowledge to the contrary on the part of the passenger, he has the right to infer that the limitation contained in his ticket will do this.

We know it has often been said, that one proposing to travel in railway cars must inform himself as to the time of arrival and departure of the trains, and the connections of the different lines; but this has generally been said in its application to one travelling upon his own business in the usual way (Beauchamp v. Railway, 56 Texas, 239); and we do not think it in conflict with the holding, that where one is going upon a special trip which he has been induced to take by the favorable terms offered by the carrier, who well knows the object intended to be accomplished, the latter should be presumed to know the connections made by the different roads over which it sells the ticket, and the passenger can presume that a reasonable time has been allowed to transact the business in the contemplation of the parties at the time of the sale. If the passenger has actual knowledge when he purchases the ticket that the time allowed is not sufficient, he might perhaps be held bound by his contract as made; but when the carrier places on sale tickets over its own and connecting roads at a reduced rate, for the purpose of inducing a large number of persons to visit a distant place for a specific purpose, we think this, of itself, should be held to be a representation by it that the time named in the ticket is reasonably sufficient for that purpose, and the purchaser can, without further inquiry, act upon such representation. See authorities above cited.

In this case there is no direct evidence that appellant had anything to do with the sale of the lots at Seymour, nor that this ticket was sold for that specific purpose, but we think the circumstances leave but little, if any, doubt as to this. The agent who sold the ticket says this excursion had been previously advertised by the town lot men, and that he had been instructed by the railway officials to place these tickets on sale at a greatly reduced rate, and he supposed those purchasing them were going to attend this sale. There was no evidence of any other reason for such reduction in the price of tickets, and we have no hesitation in concluding that the purpose of the company in selling these tickets was to enable the purchasers to attend this sale, and to carry out this contract in good faith, it was bound to give them a reasonable time in which to do this. The evidence is undisputed, that a reasonable time was not afforded in this instance; and when the explanation was made to appellant, through its conductor, that appellee had used all possible diligence since the sale to

make his return trip within the time named in his ticket, he should have been allowed to proceed.

From what we have said, it will be seen that we find no error in the action of the court in permitting appellee to testify that he had no knowledge of the connections made by the different roads over which he was to. pass. Under the circumstances, the acts of the appellant were equivalent to a representation by it that the time allowed was sufficient, and in the absence of actual knowledge by appellee to the contrary, it can not complain that he relied thereon.

We also think there was no error in admitting evidence to show the publicity that was given to the proposed sale of town lots at Seymour. It was admissible in explanation of the reason appellant had for placing on sale these excursion tickets, and to show its knowledge of appellee's purpose in purchasing one of them.

We have no fault to find with appellant's proposition under its fifth assignment, which is as follows: "The defendant railway company had a right to eject plaintiff from its car and train without the use of unnecessary force, if he failed or refused to pay fare, or present, when demanded by the conductor, a ticket or other evidence of his right to ride on its train." We think, however, this principle of law was fairly presented in the charge of the court, and there was, therefore, no error in refusing the special charge requested by appellant. The evidence of appellee's right to ride on this train consisted of his ticket and explanation to the conductor that the time to which it was limited was too short to enable him to comply therewith, and under the circumstances should have been accepted as sufficient.

We do not think there is anything in the record to raise the issue as to the right of appellee to be furnished with a special train, and there was,. therefore, no error in refusing the second special charge requested by appellant. So far as we can see, no one made any such contention. What we have already said sufficiently indicates our views as to the duty appellee was under to inform himself as to the movements of the trains, and we therefore hold appellant's seventh assignment not well taken.

The conductor had no higher right to expel appellee from the train on account of the expiration of his ticket than appellant itself had. He was only its representative in the transaction. The conductor had no more right to look to the ticket alone than appellant itself would have had if acting in person. The fourth special charge requested by appellant, in so far as it announced the proposition, that the conductor can in all cases look to the ticket alone in dealing with the passenger, was therefore correctly refused. Railway v. Mackie, 71 Texas, 491; Railway v. Martino, 2 Texas Civ. App., 634; Railway v. Wright, supra.

It seems now to be settled in this State, that a passenger can not be required to pay an additional compensation to induce the carrier to ab-

stain from wrongfully expelling him from the car. Carriers, like other persons, are required to comply with their contracts for the original consideration, and can not exact additional pay to induce them to do so. Appellant's eighth special charge, to the effect that appellee should have paid the additional fare demanded by the conductor, and brought his suit to recover it back, in order to lessen his damages, was therefore correctly refused under the decisions in this State, although both upon principle and authority much could be said in opposition to this view. Railway v. Mackie, Railway v. Martino, and Railway v. Wright, supra.

The only objection made to the ticket by the conductor was the expiration of the time to which it was limited. We understand from the statement of facts that the clause requiring it to be presented to the agent at Seymour for signature and stamp had been substantially if not literally complied with. At any rate, it is not claimed that *appellee* had omitted anything, and if the agent at Seymour failed to sign it exactly as required, it was his fault, and as he was the one designated by appellant to attend to this, it is in no position to complain at his neglect. Railway v. Martino, 2 Texas Civ. App., 634.

In its seventeenth assignment, appellant complains at the verdict for $500 as being excessive, and we are of opinion this assignment is well taken. Appellee's account of his treatment by the conductor, which is the evidence most favorable to him, and upon which this verdict must be sustained, if at all, is as follows: " I left Seymour on my return on the morning of May 2, 1891, on the first train after the sale was over. We came straight on to Wichita Falls, and then took the first train to Fort Worth, where I arrived the same evening about 5 o'clock. I could not get on to Weatherford that evening. I stayed at the hotel in Fort Worth over night, at a cost of $1.50, and took the first train from there to Weatherford, which was near noon on May 3, 1891. The conductor came for tickets, and I offered him mine. He looked at it, and said he could not take it, as the time had expired. He said there were other like tickets, and he would telegraph for instructions. The next time he came around, he had what purported to be a telegram in his hand, and said if I did not pay my fare he would be obliged to put me off. I told him, that having paid my fare, I did not feel like paying again, and that I had taken the first train from Seymour after the sale, and had complied with my contract. I went forward to Mr. Johns, Dr. Simmons, and Mr. Wells, who had like tickets, and who had received similar notice. When we got to Anneta we were put off. That was twenty miles from Fort Worth, and nine miles from Weatherford. The conductor treated me gentlemanly enough at first, but when I went into the front car, his manner changed. When I went forward to them in the car, I asked them what they were going to do. I had determined before we got to Aledo

that I would not pay. I did not tell the conductor that I had my ticket, extended. He asked me to pay my fare or get off. Anneta is a regular station. He stopped there. He knew that I would not pay. I told him. so. As we approached Anneta, he said if I would not pay he would be: obliged to put me off. At Anneta he stopped the train and put us off. I do not say that he stopped the train only for that purpose. It is a reg-- ular station. He told me to get off. I told him I got off under protest; if he intended to force me off, I would get off. He said, 'I don't know what force you want, unless I raise the window and throw you off.' He also said, if it was a row we wanted, we could get it. I could have paid my fare at the time. I was able. I refused. When I found I had missed the train at Fort Worth, I was disappointed. When the conductor put. me off, he took me by the arm, not hurting me at all, and sort of steered me. It was the manner I objected to. It mortified me. He had two assistants with him when he made the talk at Anneta. There was no necessity for his taking hold of me. We showed no disposition to oppose him. His bearing at first was gentlemanly. Afterward it was abrupt and insulting. It was domineering. On the car I would have gotten home in about twenty-five minutes, or half an hour. In a wagon, it took between two and three hours, and the ride was very uncomfortable through the heat and dust. I had a soft, comfortable seat in the car. The wagon cost $2 for the four."

Other witnesses, who seem to have been disinterested, describe the conduct of the conductor as having been polite and gentlemanly throughout, but we believe that the testimony of appellee alone shows that the verdict in this case was too large. It is perfectly clear that the conductor, while mistaken in his rights and duty, acted in entire good faith, and plainly manifested a desire to have the parties leave the train without. requiring him to resort to any force whatever, and it was only in answer to appellee's demand for force that he used the only petulant expression attributed to him. Under these circumstances, appellee was entitled to compensation only for the damage he had sustained; and while the measure of compensation that should be allowed for mortification thus caused is in the highest degree uncertain, and is therefore peculiarly within the province of the jury, yet we believe appellee's own testimony shows that. a much less sum than $500 will fully compensate him for all the injury he suffered. He seems to have been a man of mature age and judgment, at no time becoming unduly excited, and throughout looked upon the occurrence much in the light of a business transaction. In this transaction we have held he was in the right and appellant was in the wrong. and this entitles him to the actual damage he sustained therefrom, but to nothing more.

We have examined the other assignments, and find no reversible error therein, and nothing that calls for further discussion.

For the error in the excess in the verdict, as above indicated, the judgment of the court below will be reversed and the cause remanded for a new trial, unless the appellee shall within twenty days file in this court a remittitur of all of said judgment except the sum of $250, in which case it will be reformed and affirmed for said amount and costs of the court below, appellee to pay the costs of this appeal.

*Reformed and affirmed.*

Delivered September 20, 1893.

A motion for rehearing was refused.

Justice STEPHENS did not sit in this case.