Gulf, Colorado & Santa Fe Railway Co. v. J. T. Halbrook.

No. 1400.

1. **Passenger Carrier—Limited Ticket—Contract—Ejection of Passenger —Damages.**

On the theory of the case presented by his pleading and proof, plaintiff applied for and received a round trip ticket, sold at a reduced price, from M. to G. and return for his wife, who, as he explained to the agent selling it, wished to remain a month, and he received a ticket with a time limit of ten days on its use, and, discovering this fact, tendered its return and demanded an unlimited one, which the agent refused. The wife, having traveled to G. on the ticket, endeavored to return on it after ten days, explaining to the conductor the circumstances of its purchase and that she had no money to pay fare: the conductor refused to accept the ticket and put her off the train. The theory presented by defendant's proof, was that no request was made for a longer limit than ten days, and no offer to return the ticket or demand for return of money, or extension of time. Held:

(1.) It was error to submit defendant's theory of the case in a charge which required the jury in order to return a verdict for defendant to find that the ten days' limitation was a reasonable one, the time required for the round trip being but two days, and there being nothing in the case to raise such issue.

(2.) If the contract was in fact for a ticket good for thirty days, plaintiff could recover, though the agent in issuing the ticket limited it to a shorter time.

(3.) The proposition by plaintiff to the agent to sell him a ticket good for thirty days would not constitute a contract unless agreed to; but the ticket was not conclusive evidence of the contract.

(4.) Instructions as to the duty of the conductor to investigate the statements made by plaintiff's wife, as to her right to ride on the ticket, should be omitted. Her right depended on the contract, and not upon his investigating or failing to do so.

(5.) Plaintiff's right of recovery was not limited to damages accruing up to the time of the agent's refusal to correct the ticket. If the contract was made, as claimed, such refusal would not deprive plaintiff of his right to insist upon its performance, or to assume that defendant would finally comply with it.

## 2.   Damages—Charge.

In suit for wrongful ejection of plaintiff's wife from a passenger train, the instruction was to find for plaintiff "such damages as in your judgment he may be entitled to, not to exceed one thousand dollars." Held, that it would be best to give in full the rule with reference to the measure of damages in cases of this character.

APPEAL from the County Court of Coryell.   Tried below before Hon. T. C. TAYLOR.

J. W. Terry and Chas. K. Lee, for appellant, cited on the proposition that a party injured by breach of contract upon being notified that it will be disregarded must use reasonable efforts to prevent enhancement of his damages.   Railway v. Patterson, 27 S. W. Rep., 194;  Hutchinson on Carriers, sec. 809d;  Harrison v. Fink, 42 Fed. Rep., 787;  Peavy v. Railway, 81 Ga., 485; 8 S. E. Rep., 70;  Railway v. Cole, 66 Texas, 562;  Railway v. Cole, 29 O. St., 126;  Wright v. Railway, 78 Cal., 360;  Pullman Palace Car Co. v. McDonald, 21 S. W. Rep., 945;  Railway v. Smith, 63 Texas, 322;  Railway v. Birney, 71 Ill., 392;  Townsend v. Railway, 56 N. Y., 295, at pp. 301-302;  Shelton v. Railway, 29 O. St., 218-219;  McClure v. Railway, 34 Md., 532;  Railway v. Griffin, 68 Ill., 499;  Yorton v. Railway, 54 Wis., 234.

On impropriety of action of counsel in referring in argument to the action of courts and juries in other cases, particularly with reference to the amount of damages:   Railway v. Scott, 26 S. W. Rep., 998;  Moss v. Sanger, 75 Texas, 323;  Railway v. McLendon, 26 S. W. Rep., 308;  Willis v. McNeill, 57 Texas, 473;  Railway v. Cooper, 70 Texas, 67;  Railway v. Jarrell, 60 Texas, 267;  Railway v. Jones, 73 Texas, 235;  Railway v. Wesch, 85 Texas, 593;  Railway v. Southwick, 30 S. W. Rep., 592;  1 Thomp. on Trials, secs. 947, 948.

The fact of plaintiff's illness at home and the fact that he telegraphed his wife to return at once, and the fact that she may have so stated to the conductor, were all wholly irrelevant and immaterial matters in this case.   They could not affect the question of whether the defendant was liable, nor increase or diminish the amount of damages plaintiff was entitled to recover.   Railway v. Levy, 59 Texas, 551;  Railway v. Lyde, 57 Texas, 505;  Prather v. Wilkens, 68 Texas, 187.

McDowell, Miller & Hawkins, for appellee.—1.   It being an issue of fact as to whether plaintiff and defendant's agent entered into a contract for a round trip ticket good for as much as six weeks' time or not, it

was the court's duty to submit the question to the jury as it did. The charge as given by the court is correct.

2. The charge of the court stating that the right of passage springs from the contract made with the carrier, and that the ticket is not in all cases to be considered as conclusive of the passenger rights is correct. The law is that a passenger on a railway has the right to stand on his contract made with the ticket agent, and if he has not been furnished with a ticket evidencing his right as secured by the contract entered into it is the duty of the company to correct the mistake when the emergency arises or it will be liable for ejecting the passenger from its trains. Railway v. Rather, 21 S. W. Rep., 957; Railway v. Kinnebrew, 27 S. W. Rep., 631; Railway v. Mackie, 71 Texas, 494; Railway v. Wright, 21 S. W. Rep., 399; Same v. Same, 23 S. W. Rep., 400; Railway v. Dannils, 29 S. W. Rep., 426; Hufford v. Railway, 64 Mich., 631; 8 Am. St. Rep., 859.

3. When fraud or mistake is alleged as to the sale of a ticket and especially when this allegation is sustained by the evidence, the carrier is liable for wrongs and injuries in ejecting passenger, although the ticket presented shows on its face that it has expired by limitation. The passenger is not bound by the stipulations contained in the ticket unless they conform to the terms of the contract actually made at the time of purchase. Authorities same as referred to under foregoing propositions and also, Railway v. Martino, 18 S. W. Rep., 1066.

4. The holder of a round trip ticket is only required to perform or offer to carry out his part of the contract made at time of purchasing the ticket; and if appellee purchased and paid for a round trip ticket to Goldthwaite and return; and by the terms of his contract it was to be good for six weeks, he was warranted in acting upon the contract as made with defendant's ticket agent and to expect that it would be carried out by the railway company. Railway v. Martino, 18 S. W. Rep., 1066; Railway v. Rather, 21 S. W. Rep., 951; Railway v. Kinnebrew, 27 S. W. Rep., 631.

5. There is nothing contained in this record either in plaintiff's petition, or by evidence adduced on the trial either showing or tending to show that plaintiff was notified by defendant's passenger agent at McGregor before his wife took passage on said ticket, that the company would not honor said ticket after the 17th of June, A. D. 1893, and the court was not required to so rule on defendant's demurrer; or to charge the jury on that proposition as asked by defendant.

6. A failure or refusal upon the part of carrier's ticket agent to furnish the kind of ticket contracted for, or to perform any other act required of him by the rules of the company, is not equivalent to a repudiation of the contract, nor is it notice to holder of ticket that the company will not comply with the contract as actually made, and holder of such ticket is not guilty of negligence in attempting to use it, but may presume on the company's correcting the wrongful act of its selling agent when emergency arises. Railway v. Martino, 18 S. W. Rep., 1066;

Head v. Railway, 79 Ga., 358; 11 Am. St. Rep., 434; Railway v. Dougherty, 86 Ga., 744; 22 Am. St. Rep., 499.

7.   When the verdict of the jury is not excessive and there is no reason to believe that they were influenced by the use of improper language by counsel, a judgment will not be reversed simply because such course was pursued.   Railway v. Witte, 68 Texas, 295;   Railway v. O'Hare, 64 Texas, 604;  Barber v. Hutchens, 66 Texas, 319.;  Willis & Bro. v. Lowery, 66 Texas, 540.

When the wrong complained of is for a tort the wrong doer is liable in damages for all the injurious consequences of his tortious acts, which, according to the usual course of events were likely to ensue.   If Mrs. Halbrook was suffering from mental anxiety produced by the information received as to plaintiff's illness and the defendant's agent after being notified thereof wrongfully ejected her from the train and her mental anxiety was thereby aggravated and prolonged, then such illness of plaintiff was a subject to be inquired into; and it was not error to allow evidence to go to the jury as to such illness, and as to the contents of the telegrams conveying the information to Mrs. Halbrook.   McAllen v. Tel. Co., 70 Texas, 243;  Tel. Co. v. Cooper, 71 Texas, 508;  5 Am. & Eng. Encycl. Law, 6 and 7.

FISHER, CHIEF JUSTICE.—The appellee instituted this suit in the County Court of Coryell County, and by first amended original petition alleged in substance as follows:   That about the seventh day of June, 1893, his wife desired to make a trip to Goldthwaite and remain there for a month or six weeks, on account of the ill-health of his child;  that he applied to the defendant's ticket agent at its office at McGregor for a round trip ticket to Goldthwaite, informing said agent that he wanted the ticket for the use of his wife, and of the ill health of his infant child, and that his wife would want to remain at Goldthwaite for a month, or perhaps six weeks, and asked the agent if he could issue a round trip ticket for that purpose;  and that the agent replied he could, whereupon the plaintiff paid for the ticket and the defendant's agent handed him a coupon round trip ticket from McGregor to Goldthwaite, retaining the money therefor, $6.40;  that plaintiff received the ticket, supposing that he was receiving an unlimited round trip ticket, and one that would answer his wife's purpose in going to and returning from Goldthwaite when she should have completed her visit;  that he left the defendant's office with the ticket, but in a short time thereafter examined the ticket and discovered for the first time that the defendant's agent had fraudulently issued a ticket in such a manner as to limit its use to June 17th, a period of only ten days;  that as soon as he discovered the fraud, before time for his wife to board the defendant's train, he returned to the ticket office, informed the agent of the fraud he had practiced, and that the ticket was not what he had called for, or what he had purchased, and did not suit him, and tendered it back to said ticket agent and demanded the return of the money that he, the plaintiff, had paid for the

same, or that the defendant's agent should extend the time for said ticket
to be used, so as to answer the purpose for which he had purchased the
same, and said agent then and there refused to do anything for the plain-
tiff, saying that under the rules of the company he was not allowed to
do so, and telling plaintiff that he could keep the said ticket and he would
sell him another, but this was all he could do for him.    On the refusal
of the said agent to correct the said fraud, plaintiff delivered the ticket
to his wife and she boarded one of defendant's cars at McGregor and was
transported·to Goldthwaite, defendant's conductors honoring the ticket
and taking up the coupons for Goldthwaite and returning the coupons
for return passage, Goldthwaite to McGregor;  that thereafter plaintiff
became dangerously ill with fever at McGregor and telegraphed his wife,
informing·her of his condition and requesting her to return as soon as
possible;  that thereafter on June 17, on receipt of such telegram, plain-
tiff's wife promptly repaired to the defendant's depot at Goldthwaite, but
it was too late for the train going in the direction of McGregor on said
date, and she was compelled to remain in Goldthwaite until the 18th of
June;  that she presented the ticket to defendant's baggagemaster at
Goldthwaite and demanded that he check her baggage to McGregor on
the faith of said coupon, and that such agent then and there honored
the said coupon and did check her baggage to McGregor;  that plaintiff's
wife, believing that she was entitled to be transported to McGregor by
the defendant under and by virtue of such coupon, entered into the de-
fendant's cars;  and after riding in the cars a short distance she was
called upon for her ticket by the conductor;  that the defendant's con-
ductor refused to honor the said ticket, informed plaintiff's wife that
she would have to pay fare;  that she told said conductor the circum-
stances under which such ticket was purchased, informed him of the
refusal of the agent.at McGregor to correct such fraud, and also told
him of her husband's sickness at McGregor and her anxiety to be per-
mitted to continue her journey, and that she had no means to pay fare
or purchase another ticket, and on her failure to produce another ticket
the said conductor ejected her from said train at Lometa, Texas;  all to
plaintiff's damage in the sum of $1000.    Defendant answered by special
plea to the jurisdiction, general exceptions and general denial.    There
was a trial before jury, verdict and judgment on the 11th day of Janu-
ary, 1895, for $500.

It appears from the case made by the evidence offered in behalf of
appellee that on the 7th day of June, 1893, he applied to the appellant's
ticket agent at McGregor for a round trip ticket to Goldthwaite and re-
turn for the use of his wife, and at the time informed the agent that on
account of the ill health of his infant child, who would accompany his
wife, she would remain at Goldthwaite and vicinity for a period of one
month or six weeks, and asked the defendant's agent if he could issue
and sell a round trip ticket for that purpose;  and thereupon defendant's
agent replied that he could.    The agent then made out the ticket and
folded and handed it to appellee, who thereupon paid the charges for a

round trip ticket. A few minutes afterwards appellee discovered that the ticket was limited to go and return within ten days, whereupon he called the attention of the agent to such limitations and demanded a ticket good upon which to return in a month or six weeks, and tendered the ticket back to the agent and demanded a return of his money, or that the agent should extend the time as agreed upon. All of this the agent refused to do, and he kept the money. The round trip tickets sold for a reduced price. The appellee then placed his wife and child aboard the appellant's train and they traveled upon the ticket to Goldthwaite, and after the ten days had expired, but before the expiration of thirty days from the day upon which the ticket was purchased, she boarded defendant's train at Goldthwaite in order to return to her home at McGregor. Before reaching Lometa, a station on appellant's line of road, she was approached by the conductor for her ticket. The ticket originally purchased was produced and tendered the conductor and he declined to receive it, or permit her to have transportation upon it because ten days had expired from the day of its issuance. She then explained to the conductor the circumstances under which her husband had purchased the ticket, and that the agent at McGregor had refused to issue her a ticket for the time requested by her husband. The conductor informed her that he would not receive the ticket, and that she would have to pay fare or leave the train upon its arrival at Lometa. She stated that she had no money with which to pay the fare demanded. Upon arrival of the train at Lometa she was required to leave it, and afterwards she returned to Goldthwaite in order to obtain money with which to purchase a ticket to McGregor. She procured the money and purchased a ticket and returned to McGregor. It appears that two days is all the time that was required in order to make the trip to Goldthwaite from McGregor and return. The evidence of the appellant is to the effect that a ticket was sold the appellee limited to ten days and that no request was made for a longer time, and that appellee did not offer to return the ticket and request another or that his money be refunded. In other words, the case of appellant as shown by its evidence is that no such understanding existed between it and appellee as testified about by Halbrook.

The court, after instructing the jury with reference to ascertaining if a contract existed as claimed by appellee, and after instructing them upon the theory of plaintiff's case, instructed the jury as follows: "On the other hand, if you believe from the evidence that plaintiff bought a round trip ticket of defendant's agent at McGregor from said point to Goldthwaite, on June 7, 1893, and that said ticket as purchased by plaintiff was good to return in ten days, and that said ticket was delivered by said agent to plaintiff and evidenced the contract plaintiff made with defendant's agent, and that said limitation of said ticket to return in ten days was reasonable under the instructions heretofore given, viewed from the standpoint of the then surrounding circumstances, and that defendant's agent delivered to plaintiff just such a ticket as was bought

and paid for by plaintiff, and that said transaction was characterized with good faith and fair dealing on the part of defendant, then you will find for defendant." This charge was erroneous. The theory of the defendant, as it arose from the facts, was that the ticket represented and stated the contract as actually made, and that it did not enter into a contract giving the wife of appellee a right to transportation after ten days from the date the ticket was sold. The question in the case was, whether the contract entered into for transportation was for ten days, as claimed by defendant, or was for one month or six weeks, as claimed by the plaintiff. There was no controversy in the case over the question whether ten days allowed by the ticket was or was not a reasonable time in which to make the trip to Goldthwaite from McGregor and return. In fact, the evidence, without contradiction, shows that the trip going and returning could have been made over the route sold in much less time than ten days. Therefore it was error to, in effect, instruct the jury that the time limited must be reasonable before they could find for the defendant. If ten days was the time agreed upon at the time of the purchase of the ticket, or if there was no time agreed upon in which the return trip should be made, then the defendant should recover. If a time was agreed upon as claimed by the plaintiff for return transportation good for thirty days or six weeks, this contract, if any, would govern the rights of the parties, although the agent in issuing the ticket limited it to a shorter period of time. Railway v. Mackie, 71 Texas, 494; Railway v. Rather, 3 Texas Civ. App., 72 (21 S. W. Rep., 957); Railway v. Wright, 21 S. W. Rep., 400; Railway v. Kinnebrew, 27 S. W. Rep., 631; Railway v. Martino, 18 S. W. Rep. 1069; 2 Texas Civ. App., 634; s. c., 21 S. W. Rep., 781); Railway v. Dennis, 23 S. W. Rep., 400. The real question in the case is whether such a contract was entered into. The statement by the plaintiff, that he desired such a ticket, and proposition submitted to the agent to sell him a ticket of that description, will not constitute a contract unless there was an agreement or understanding between the parties that plaintiff should have the desired transportation. The ticket is not conclusive evidence of the contract, and the plaintiff may show what it really is. (Cases cited, supra.)

In view of another trial, we suggest, in reference to the question raised by the ninth assignment of errors, that it would be best for the court in its charge to give in full the rule with reference to the measure of damages that exists in cases of this character. And we also suggest that it would be proper to omit instructing the jury that it would be the duty of the conductor to investigate the statement made by plaintiff's wife as to her right to ride on the ticket. If a contract was actually made as claimed by the appellee, and the conductor was informed of its terms when he called upon the holder of the ticket for her transportation, the appellant would be bound by the contract, whether the conductor endeavored or not to investigate her statement or to ascertain if such a contract was entered into.

The argument of counsel complained of in the twenty-sixth and

twenty-seventh assignments of error will not likely be repeated upon another trial. If so, it is possible it may be ground for reversal. We have examined the other questions raised and we find they, in our judgment, present no reversible error. But there is one question we desire to notice before closing the case.

The appellant contends that if a contract was entered into as claimed by appellee, a breach of the same occurred when the railway agent refused to issue him a ticket good for the time he desired when he demanded one of that character from him at the time he called the attention of the agent to the ten days' time in which the ticket was limited. And if a breach of the contract then resulted, appellee's action for damages then arose, and he could only recover the damages sustained up to that time, and by reason of that breach, and not for what occurred subsequently, as he knew when he placed his wife aboard the train that the contract had been breached and he would not be permitted to use the ticket after the expiration of ten days. This does not appear to us to be a sound proposition of law. If a contract for transportation good for the time stated by appellee was actually made, and the consideration therefor was paid, it was a right of appellee to enforce performance in accord with its terms, and the statement by appellant that it did not propose to observe the contract would not absolve or relieve it from its liability to perform it. When one acquires a right by a valid contract and he undertakes to enjoy its benefits in a lawful and orderly manner, a former notice to him that he will not be permitted to enjoy the right purchased will not end the contract and deprive him of its benefits. And when in the pursuit of his rights and privileges in the premises, he is prevented in partaking of its benefits by the conduct of the violator of the agreement, such one so creating the breach can not urge as a defense that the breach he was guilty of shall be a bar to recovery for the subsequent consequences that resulted by reason of his wrongful interference. Suppose that I should purchase a ticket granting me the privilege of a seat in a theater, and before I occupied the seat I was informed by the agent that sold it that I would not be permitted to enjoy its benefits; and, ignoring the breach, I should occupy the seat purchased, and when conducting myself in an orderly manner, should be removed or ejected from the theater. Could the consequences that resulted from this tort or trespass be defended on the ground that the agent had notified me that he had violated or would violate the contract, and would I be estopped in recovering such damages because I had been previously informed that I should not enjoy what I had bought and paid for and what was rightfully mine? A rule that would deny me the privilege to enjoy the benefits of the contract and subordinate my rights to the arbitrary will of the violator would be a doctrine that should find no favor or advocate in a court of law or equity. But a rule more consonant with reason and justice would be that I might expect the wrongdoer, when I was endeavoring to enjoy the privileges and benefits purchased, would "see the error of his ways," and relent, and not persist

in executing the unlawful purpose to create a breach in fact by wrong-
fully and forcibly depriving me of benefits to which I may be entitled.
If I, without violence and in an orderly manner, seek to enjoy the bene-
fits I have purchased, it then becomes the duty of the one from whom I
acquired these rights by contract to abstain from acts that would deprive
me of my rights in the premises, and if he, in violation of this duty, be-
comes an active agent in further breaching the contract by forcibly re-
fusing me the privilege purchased, there results an additional wrong in
the nature of a tort or trespass, for the proximate consequences of which
he would be liable.   Railway v. Roemer, 1 Texas Civ. App. Rep., 192;
Shirley v. Railway, 78 Texas, 144.

For the error in the charge, the judgment is reversed and cause re-
manded.

*Reversed and remanded.*

Delivered February 5, 1896.