## INDIANAPOLIS STREET RAILWAY COMPANY *v.* WILSON.

[No. 19,868. Filed March 19, 1903. Rehearing denied June 23, 1903.]

CARRIERS.—*Street Railroads.—Expulsion of Passenger.—Transfer Ticket.* —Plaintiff took passage on one of defendant's street cars, paid his fare, and requested the conductor in charge of the car to give him a transfer ticket to a certain other line. The conductor gave him a transfer ticket, and, upon arriving at the transfer junction, plaintiff boarded a car of the line to which he had asked to be transferred and tendered the conductor the transfer ticket, but the latter refused to receive the same, claiming that the transfer was to another line on defendant's road, and demanded that plaintiff pay his fare or leave the car. Plaintiff explained that he asked for a proper transfer, and that he received the one tendered, refused to pay an additional fare, and was forcibly ejected. *Held*, that the expulsion was unjustifiable, and that defendant is liable in damages therefor. Monks and Gillett, JJ. dissent.

From Johnson Circuit Court; *W. J. Buckingham,* Judge.

Action by Samuel J. Wilson against the Indianapolis Street Railway Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*F. Winter, W. H. Latta, S. N. Chambers, S. O. Pickens* and *C. W. Moores,* for appellant.
*W. A. Johnson* and *W. J. Beckett,* for appellee.

JORDAN, J.—Action by appellee against appellant to recover damages for an unlawful expulsion from one of its street cars. A trial by jury resulted in appellee being

awarded damages, and, over appellant's motion for a new trial, judgment was rendered on the verdict of the jury. From this judgment appellant appeals, and the sole question involved is, can the expulsion of appellee by appellant from its car, under the circumstances, be legally justified?

The following are facts material to the point in issue: Appellant is a corporation engaged as a common carrier in operating a street railway in the city of Indianapolis. By the provisions and terms of the franchise granted to it by said city, and under which it is operating its railroad therein, a passenger on the payment of the required fare is entitled to demand and receive, without extra charge, from the conductor of the car upon which he first takes passage, a transfer ticket, which entitles him to be carried as a passenger over the line to which he is transferred. Appellant's grant or franchise, which it obtained from the city of Indianapolis, under its terms and conditions not only imposes upon it the duty of granting to the passenger the privilege of transfer upon his request, but provides particularly that the line to which the passenger is transferred "shall be plainly indicated on said transfer ticket." It is shown that appellee on the evening of September 23, 1899, took passage upon one of appellant's cars running on and over its College avenue line, and upon paying his fare he requested the conductor in charge of said car to give him a transfer ticket to the Virginia avenue line, his destination being a point on the latter line. Upon his taking passage on one of the cars running on and over the Virginia avenue line the conductor in charge of said car demanded fare of appellee, and the latter tendered to said conductor the transfer ticket which he had received from the College avenue conductor. Upon the tender of this ticket it appears that a controversy arose between appellee and the conductor on the Virginia avenue car in regard to said ticket, the conductor claiming that the ticket was a South East street transfer instead of a Virginia

avenue transfer, and demanded that appellee pay his fare or leave the car. He explained to the conductor that he had requested the College avenue conductor to give him a transfer ticket to the Virginia avenue line, and had received the ticket which he then tendered. The following is what appellee testified to as a witness upon the trial in respect to what took place between him and the conductor after he took passage on the Virginia avenue car: "The conductor asked me for my fare, and I handed him this transfer ticket, and he said it was not a Virginia avenue transfer. I said I got it from the College avenue conductor for a Virginia avenue, and I believe it is a Virginia avenue, and I examined it very closely, and I could hardly distinguish it then. That was the first time I examined it very closely. I told him I received it from the College avenue conductor, and asked the College avenue conductor for a Virginia avenue transfer, and that is what he gave me for a Virginia avenue transfer. He said it was a South East street transfer, and I thought it was a Virginia avenue transfer." It appears it was dark when the appellee boarded the College avenue car, but the latter was illuminated with electric lights, and he is shown to have been on the car for about ten minutes before he alighted therefrom to take passage on the transfer line. The transfer ticket was of the usual form used by the company, and contained spaces or points where the conductor was to punch in order to indicate the line to which the passenger was to be transferred. Immediately at the left of the word "Virginia" was the word "avenue." The last five letters of the word "Virginia" ran through the dark space in which the conductor was to punch to indicate that the passenger had been transferred to the Virginia avenue line. Immediately below this space was one intended to be punched in the event the passenger was transferred to South East street, a line dividing the two spaces. In punching the transfer ticket in question it appears that

the College avenue conductor had awkwardly used the punch, and, instead of plainly indicating that appellee had been transferred to the Virginia avenue line, he punched out what might be said to be the entire space opposite South East street, and also a part of the Virginia avenue space, the puncture made extending across the line dividing the two spaces, and this, as it seems, gave rise to the controversy between appellee and the conductor of the Virginia avenue line; the latter insisting that the ticket indicated that the former had been transferred to the South East street line, while appellee, on the other hand, insisted that he had requested a transfer to the Virginia avenue line, and stated that he believed the ticket indicated such transfer. Upon appellee's refusal to pay the additional fare which the conductor on the Virginia avenue line demanded, he was forcibly ejected from the car by the conductor and motorman.

Appellee, as the facts show, became a passenger upon one of appellant's street cars, and paid the required fare, and thereupon requested, as he had a right to do, to be furnished a transfer ticket over the Virginia avenue line of appellant's road, in order that he might be carried to the end of his journey. Upon the payment of his fare and making the request which he did, the duty then rested upon appellant, under the provisions and conditions of the franchise which it had obtained from the city of Indianapolis, to furnish or provide appellee, as such passenger, with a transfer ticket plainly indicating thereby the line of its railway to which he, in accordance with his request, had been transferred, and over which, under the circumstances, he had the right to be carried. It is possibly true, as counsel for appellant seemingly insist, that appellee had ample time and opportunity to inspect his transfer ticket, and thereby ascertain whether the conductor of the College avenue car had properly performed his duty by correctly indicating the line of transfer.

The duty of inspection, under the circumstances, the law did not exact of him, for, in the absence of any notice to the contrary, he had the right to presume that appellant's conductor and agent had correctly discharged his duty in punching the ticket, and thereby indicating the transfer over the line in accordance with his request. Appellee had nothing to do with the preparation of the ticket, for appellant seems to have prescribed the form and contents thereof, and also the method or means to be employed to indicate or point out thereon the line of its railway over which a transferee was entitled to be carried. The many words, figures, spaces, and abbreviations which the ticket furnished by appellant to appellee, as exhibited by the record, contained, would *prima facie* be unintelligible to many persons, and certainly it would be an unreasonable imposition to require of a passenger, upon receiving one of these tickets, the duty to inspect the same in order to discover if the conductor had made a mistake in the performance of his duty. Appellee, a mere passenger, under the circumstances, was not, in the eye of the law, either presumed or bound to know the meaning of the various figures, abbreviations, punch marks, and other mystic symbols which the transfer ticket in question contained. These possibly could only be correctly interpreted or read in the light of the rules and regulations adopted by appellant company for the guidance of its conductors and employes. Neither was he presumed to know or required to take notice of these rules and regulations made by appellant for the aforesaid purposes. The above propositions are well and firmly established by the authorities. It may be said, it is true, that there is a sharp conflict between the authorities in respect to the question as to whether a ticket furnished by a common carrier for transportation shall be treated and regarded as conclusive evidence of the holder's right of passage.

There is a line of decisions which affirms the rule that the ticket must be considered as conclusive evidence of the passenger's rights, although it may not, in its true sense, express or evidence the contract into which the passenger and the carrier entered. These cases hold that, in the event a ticket is defective, the defects of which are due to the negligence or carelessness of the agent or agents of the carrier, then, under the circumstances, the expulsion of the holder thereof, upon his refusal to pay the additional fare required, is justified. While, on the other hand, there is another long line of cases which rule to the contrary, and deny the conclusive force of a ticket furnished by the carrier to the passenger. The latter cases, in effect, affirm that the ticket is only the evidence of the contract as made between the passenger and the carrier, and if it fails to disclose the true contract, its infirmity or fault in this respect must be charged to the carrier, and the latter is liable for the natural consequences resulting by reason of the defects in the ticket due to the negligence of its agents. They affirm the rule that inasmuch as the passenger is neither required under the law, nor in fact permitted, to print, write, or stamp the ticket, or to have anything to do whatever with its preparation, this privilege or right being reserved by the carrier to itself, therefore the passenger has the right to believe or presume in the absence of notice to the contrary, that the ticket furnished and delivered to him is a correct expression of the contract as made between him and the carrier. The following authorities or cases decided by the higher courts of other states are adverse to the contention of counsel for appellant in the case at bar. Many of them directly, and others in effect indirectly, deny the conclusive force of a railroad ticket sold by the carrier to a passenger: *Trice* v. *Chesapeake, etc., R. Co.,* 40 W. Va. 271, 21 S. E. 1022; *Northern Pac. R. Co.* v. *Pauson,* 70 Fed. 585, 30 L. R. A. 730; *Ray* v. *Courtland, etc., Traction Co.,*

Indianapolis St. R. Co. *v.* Wilson.

46 N. Y. Supp. 521; *Jenkins* v. *Brooklyn Heights R. Co.,* 51 N. Y. Supp. 216; *Eddy* v. *Syracuse, etc., R. Co.,* 63 N. Y. Supp. 645; *New York, etc., R. Co.* v. *Winters,* 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71; *Murdock* v. *Boston, etc., R. Co.,* 137 Mass. 293, 50 Am. Rep. 307; *Gulf, etc., R. Co.* v. *Rather,* 3 Tex. Civ. App. 72, 21 S. W. 951; *Gulf, etc., R. Co.* v. *Copeland,* 17 Tex. Civ. App. 55, 42 S. W. 239; *Texas, etc., R. Co.* v. *Dennis,* 4 Tex. Civ. App. 90, 23 S. W. 400; *St. Louis, etc., R. Co.* v. *Mackie,* 71 Tex. 491, 9 S. W. 451, 1 L. R. A. 667, 10 Am. St. 776; *Missouri Pac. R. Co.* v. *Martino,* 2 Tex. Civ. App. 634, 18 S. W. 1066, 21 S. W. 781; *Burnham* v. *Grand Trunk R. Co.,* 63 Me. 298, 18 Am. Rep. 220; *Ellsworth* v. *Chicago, etc., R. Co.,* 95 Iowa 98, 63 N. W. 584, 29 L. R. A. 173; *Yorton* v. *Milwaukee, etc., R. Co.,* 62 Wis. 367, 21 N. W. 516, 23 N. W. 401; *Philadelphia, etc., R. Co.* v. *Rice,* 64 Md. 63, 21 Atl. 97; *Appleby* v. *St. Paul City R. Co.,* 54 Minn. 169, 55 N. W. 1117, 40 Am. St. 308; *Laird* v. *Pittsburg Traction Co.,* 166 Pa. St. 4, 31 Atl. 51; *Hot Springs R. Co.* v. *Deloney,* 65 Ark. 177, 45 S. W. 351, 67 Am. St. 913; *Head* v. *Georgia Pac. R. Co.,* 79 Ga. 358, 7 S. E. 217, 11 Am. St. 434; *Georgia Railroad* v. *Olds,* 77 Ga. 673; *Hufford* v. *Grand Rapids, etc., R. Co.,* 64 Mich. 631, 31 N. W. 544, 8 Am. St. 859; *Georgia, R., etc., Co.* v. *Dougherty,* 86 Ga. 744, 12 S. E. 747, 22 Am. St. 499; *Kansas City, etc., R. Co.* v. *Riley,* 68 Miss. 765, 9 South. 443, 13 L. R. A. 38, 24 Am. St. 309; *Lawshe* v. *Tacoma R., etc., Co.* (Wash.), 70 Pac. 118; *O'Rourke* v. *Street R. Co.,* 103 Tenn. 124, 52 S. W. 872, 76 Am. St. 639, 46 L. R. A. 614; Wood, Railroads (2d ed.), §349; 25 Am. & Eng. Ency. Law, 1075, 1076. The following decisions of our own courts are in harmony with and support the doctrine affirmed by the decisions in the foregoing cases: *Pittsburgh, etc., R. Co.* v. *Hennigh,* 39 Ind. 509; *Toledo, etc., R. Co.* v. *Mc-Donough,* 53 Ind. 289; *Lake Erie, etc., R. Co.* v. *Fix,*

88 Ind. 381, 45 Am. Rep. 464; *Pennsylvania Co.* v. *Bray,* 125 Ind. 229; *Louisville, etc., R. Co.* v. *Conrad,* 4 Ind. App. 83; *Chicago, etc., R. Co.* v. *Graham,* 3 Ind. App. 28, 50 Am. St. 256; *Cleveland, etc., R. Co.* v. *Beckett,* 11 Ind. App. 547; *Evansville, etc., R. Co.* v. *Cates,* 14 Ind. App. 172; *Cleveland, etc., R. Co.* v. *Kinsley,* 27 Ind. App. 135, 87 Am. St. 245.

The extent to which these cases support the doctrine in question and sustain appellee's right to a recovery in this case is that where the passenger is aboard the cars of the carrier without the proper evidence or token of his right of passage, which is due to the mistake or fault of the carrier's agent, and not to the fault of the passenger, then, under such circumstances, the carrier's agent in charge of the train must heed or accept the reasonable explanations of the passenger in regard to the ticket in dispute.

An examination of the cases pro and con upon the question herein involved convinces us that the weight of authority and the better reason are against the contention of counsel for appellant, and that the right of the appellee to recover under the facts in this appeal is well supported by the decisions of our own, as well as other courts.

We deem it useful specially to refer to some of the many decisions herein above cited, several of which are virtually identical with the case before us, for consideration. In the appeal of the *Pennsylvania Co.* v. *Bray, supra,* it appears that the passenger presented to the conductor of the railroad company a going coupon of a round-trip ticket from Mooresville to Indianapolis as his fare from Indianapolis to Mooresville. This coupon the conductor refused to receive upon the ground that it was the wrong coupon. It is disclosed that this was the first knowledge that the passenger had that the coupon which he presented was the going instead of the returning part of the ticket, and he explained to the conductor that he had purchased the ticket a few days previous from the company, and

Indianapolis St. R. Co. *v.* Wilson.

had presented it to a conductor in charge of one of the company's trains going from Mooresville to Indianapolis, and the conductor took up the returning coupon, and gave him back the going coupon. This statement or explanation upon the part of the passenger the conductor refused to accept or heed, but demanded fare, and upon refusal to pay the same he ejected the passenger from the car. This court held that the expulsion, under the circumstances, was wrongful, and that the passenger was entitled to recover damages therefor.

In the appeal of *Lawshe* v. *Tacoma R., etc., Co., supra,* recently decided by the supreme court of Washington, the facts are virtually identical with those in the case at bar. It is disclosed that the railway company in that case was a common carrier, engaged in operating a street car line in the city of Tacoma, and issued transfer tickets to passengers, good for passage over the various connecting lines operated by the said company. The plaintiff in that case became a passenger on a street car running over the Pacific avenue line, and requested a transfer to the I street line. By mistake it appears the conductor gave him a transfer ticket to a line other than the I street line. Not observing the mistake, the plaintiff took passage on a car running over the I street line, and presented the ticket to the conductor in charge thereof, who refused to accept it, and demanded fare which the plaintiff declined to pay, and consequently he was ejected from the car. The court held, under the facts, that his expulsion was wrongful, for which he was entitled to a recovery. In the course of the opinion the court said: "It seems to us that in accordance with the general principles of law the appellant should recover. It is too plain for argument that only the right to sue for the recovery of the fare or a portion of the fare received by the company will be totally inadequate, and, through the plain, everyday law governing agency, the company is re-

sponsible for the acts of its agent and for his mistakes. This mistake it was the duty of the company to correct. It must necessarily correct it through its agents. It makes no difference, in reason, that the agent who was called upon to correct the mistake was another and different agent from the one who made the mistake. They were both agents of the company, and the act of the first conductor was in effect the act of the second conductor, because the acts of both were the acts of the company; the company having, for its own convenience, intrusted its business to two agents instead of one. The contract was made when the passenger paid the fare, and it was a contract not with any particular agent of the company, but with the company through its agents. The first conductor, who made the mistake, was not the agent of the passenger, but was the agent of the company, and his mistake was therefore the mistake of the company. If any other rule prevailed, the result would be that the company would be allowed to deprive the passenger of part of the benefit of his contract on account of the mistake made by the company, and for which he was in nowise to blame, for he had a right to assume that the conductor furnished him with the transportation for which he asked and for which he paid."

In the case of *O'Rourke* v. *Street R. Co.,* 103 Tenn. 124, 52 S. W. 872, 76 Am. St. 639, 46 L. R. A. 614, the plaintiff with his wife and three children took passage on a Beale and Lane avenue street car of the defendant's road in the city of Memphis. Upon paying the proper fares, he requested to be furnished by the conductor in charge of the car with the requisite number of transfer tickets to a north-bound Main street car of the same company. The conductor punched the tickets in such a manner as to indicate that the time of their issue was 1:40 p. m., when in fact they were issued nearly an hour later, and were fully within the time limit. The conductor in charge

of the transfer car, over the plaintiff's explanation showing that the first conductor, in punching the tickets, must have made a mistake in the time, refused to accept them, claiming that under the rules of the company the time limit of the tickets had expired, and, the plaintiff refusing to pay additional fare, he and his family were expelled from the car. The supreme court in that case on appeal held that the expulsion was wrongful and the plaintiff was entitled to recover damages therefor. In speaking in respect to the rules of law governing the case, the court said: "The ticket, whether for transfer, as in the present case, or for original passage, may well be called the carrier's written direction by one agent to another agent concerning the particular transportation in hand; and if the direction be contrary to the contract, and expulsion follow as a consequence, the carrier must be answerable for all proximate damages ensuing therefrom, just as any other principal is liable for the injurious result of misdirection to his agent. * * * The plaintiff had a right to believe the transfer ticket all it should be. With it he diligently sought and promptly entered the first transfer car, and, upon being challenged by the conductor of that car as too late to use the ticket, he made a fair and reasonable statement, showing that he had just left the first car and that the first conductor must have wrongly indicated the hour of issuance on the face of the ticket. On that statement the plaintiff should have been allowed to pursue his journey to its end. He owed the company no other duty, and his expulsion under such circumstances was a tortious breach of the contract, for which he became entitled to recover all approximately resulting damages, including those for humiliation and mortification, if such were in fact sustained."

In the case of *Laird* v. *Pittsburg Traction Co.,* 166 Pa. St. 4, 31 Atl. 51, a conductor of the defendant's street car issued a transfer ticket to the plaintiff. This ticket con-

tained two punch marks in respect to the time of its issue. One indicated 7:30 a. m. and the other 9 a. m. The conductor on the transfer car refused to accept it upon the ground that it was two hours old, and not within the time limit as provided by the rules of the company. The plaintiff explained to him that the ticket had been in fact issued at 9 a. m., just before he took passage on the transfer car. On his refusal to pay the fare demanded he was ejected from the car. The court in that appeal held that the company was liable for the wrongful expulsion of the plaintiff, for the reason that it was responsible for the defective or doubtful character of the transfer ticket.

In the case of *Hufford* v. *Grand Rapids, etc., R. Co.,* 64 Mich. 631, 31 N. W. 544, 8 Am. St. 859, the agent of the railroad company sold and delivered to the plaintiff as a good ticket one which had been canceled. The conductor declined to receive it, and the plaintiff, in order to prevent his expulsion from the car, paid the fare which the conductor exacted. He instituted an action for damages, and the supreme court of Michigan, in the appeal cited, sustained his right to recover. The case appears to have been twice appealed to the supreme court, the first decision being reported in 53 Mich. 118, 18 N. W. 580, entitled *Hufford* v. *Grand Rapids, etc., R. Co.,* and the decision in that appeal is cited by counsel for appellant in the case at bar in support of their contention. It is true that the court in the first appeal affirmed that, as between the passenger and the conductor, the ticket must be regarded as the conclusive evidence of the extent of the passenger's right to travel, but in the second appeal—64 Mich. 631, 31 N. W. 544, 8 Am. St. 859—the court seems to have modified its holding in the first appeal, saying: "When the plaintiff told the conductor on the train that he had paid his fare, and stated the amount he had paid to the agent who gave him the ticket he presented, and told him it was good, it was the duty of the conductor to accept the statement of

the plaintiff until he found out it was not true, no matter what the ticket contained in words, figures, or other marks."

In *Ellsworth* v. *Chicago, etc., R. Co.,* 95 Iowa 98, 63 N. W. 584, 29 L. R. A. 173, the ticket agent of the defendant sold the plaintiff a ticket which by mistake of the agent was antedated three days from the time of its purchase. The plaintiff presented it for passage on the day it was actually issued, but the conductor in charge of the train refused to accept it because on its face it disclosed that the time for using it had expired. The plaintiff refused to pay the fare, and was ejected. The court, under the facts, held that the railroad company was liable for damages by reason of the unlawful expulsion of the plaintiff.

In *Evansville, etc., R. Co.* v. *Cates,* 14 Ind. App. 172, the passenger requested of the railroad company's agent at Evansville a ticket from the latter city to the city of Terre Haute, and paid therefor the regular price of the fare. By mistake the agent furnished and delivered to the passenger a ticket good only from Evansville to Vincennes, a station on the carrier's road between Evansville and Terre Haute. The passenger, without any fault on his part, believing the ticket so furnished and delivered to him by the agent, under his request, was in compliance therewith, took passage on a train running from Evansville to Terre Haute, and surrendered the ticket in question to the conductor in charge of the train. After the train had passed beyond Vincennes, the conductor demanded of him additional fare on the ground that the ticket which he had surrendered was only good from Evansville to Vincennes. The passenger explained the situation in regard to the ticket to the conductor, informing him that the ticket which he had surrendered to him was one good from Evansville to Terre Haute, which he had purchased and paid for, and that he had no money with which to pay additional or extra fare

as the conductor demanded. The conductor refused to heed or accept his explanation, and upon the failure of the passenger to pay the fare demanded, he was ejected. It was held in that case, under the circumstances, that he was entitled to recover damages for the wrongful expulsion. In answering the contention of appellant in that appeal that it is impracticable for a conductor to investigate the explanations or statements of a passenger in regard to his ticket for the reason that while so doing the passenger may reach his destination and depart from the train, and that the company can not pursue him without inconvenience and expense, the court said, at page 178: "This is not much more impracticable than for a passenger to pay a second time who has no more money; nor is it, perhaps, much more inconvenient for the company to pursue the passenger for his fare than for the passenger to go to the expense and trouble of convincing the company that its official has made a mistake and compelling the return of the money inproperly · exacted. As a rule, the amount involved and the expense and trouble required would be widely disproportionate."

In Wood, Railroads (2d ed.), §349, the author says: "Where the passenger asks and pays for a certain ticket, and the station agent by mistake gives him a different one, which does not entitle him to the passage desired, the conductor has no right to expel him, and the company is liable in damages if he is expelled. The passenger has a right to rely on the agent to give him the right ticket. There are authorities which hold the other way, but it seems that their views are indefensible."

In 25 Am. & Eng. Ency. Law, 1076, the authors of this work, after stating that some of the authorities assert that a railroad conductor can not be expected to listen to the passenger's explanation in regard to the ticket in dispute; that the passenger should either pay the fare demanded by the conductor or leave the train, and then sue the company

for a breach of contract; otherwise, if he attempts to remain on the train without paying the fare, and is expelled therefrom, he can recover no damages for the expulsion—say: "Others hold that the conductor has no right to expel the passenger, and if he does so, the company is liable for damages therefor. The latter would seem to be the better doctrine—it certainly has the support of the more recent cases."

In *Hot Springs R. Co.* v. *Deloney,* 65 Ark. 177, 45 S. W. 351, 67 Am. St. 913, the passenger presented to the conductor of the defendant's train a ticket which he had purchased for passage to a certain point on the railroad. This ticket by mistake or fault of the ticket agent had not been properly made out so as to show that the passenger was entitled to passage to the place to which he had paid his fare. On his refusal to pay the additional fare demanded, he was ejected. It was held in that case that the expulsion was wrongful, and the company liable therefor in damages. The appellant in that appeal insisted that the conductor could only rely upon the face of the ticket to determine his duty in the premises, and was not required to heed the explanations of the passenger to the effect that the ticket agent had made a mistake in issuing the ticket. This contention was opposed by counsel for appellee. The court after reviewing the authorities pro and con said: "There is this much to be said, however, and that is that the tendency of more recent decisions is towards at least a conservative view of the principle contended for by appellee's counsel; and we adopt that in this case, to wit, that, notwithstanding the conductor has only carried out the company's rules and regulations, and these are reasonable, and he therefore may be exonerated from blame personally, yet, as the company, through its ticket agent acting for it, was guilty of doing that which produced all the injury the plaintiff may have suffered from being put off the train, it is liable for such, and can not shield itself behind the

faithfulness of its servant the conductor, for its negligence in not delivering a proper ticket to the plaintiff, and has not only injured the plaintiff, if indeed he was injured, but placed the conductor in the attitude of participating in the wrongdoing, while yet performing his duty personally, while of course ignorant of the wrong done to the plaintiff, if any was done."

Ordinarily, as the authorities affirm, a railroad ticket for passage is regarded as a mere token, voucher, or receipt adopted by the carrier for its convenience to show that the passenger to whom it has been issued or sold has paid the required fare for his right to be carried from one point on the railroad to another. It is merely evidence of such right and can not be said, in its ordinary form, as such a token or voucher, to constitute the sole contract for passage between the carrier and the passenger. But where a railroad ticket, in addition to the ordinary and usual form, contains some reasonable stipulation, limitation, or condition to which the purchaser has assented, then it may be said as to such stipulation, limitation, or condition, it constitutes a binding contract between the parties. 25 Am. & Eng. Ency. Law, 1074, 1075, and authorities there cited; Elliott, Railroads, §1593.

There can be no sound reason advanced for holding that such a voucher or token as is a passage ticket in its ordinary form must be regarded or considered as the exclusive evidence of the passenger's right to be carried, and that the agent of the carrier may, over the reasonable explanations or statements of the passenger in regard to his right to be carried thereon, expel him from the car on which he has taken passage unless he pays the extra fare demanded, without subjecting the carrier to damages by reason of such expulsion, where the latter, under the circumstances, as between the passenger and the carrier company, is shown to have been wrongful. When the case at bar, under the facts, is tested by the principles affirmed by the

authorities to which we have referred, the conclusion which we reach will be found to be amply sustained upon cogent and sound reason.

The fact that the wrong of which appellee complains may be said to be due to the combined faults of two of appellant's conductors or agents exerts no material influence over his right to recover, for, under the circumstances, appellant must be presumed to have been present and acting at the time through the agency of the conductor who issued the transfer ticket, and through the agency of the other who, over the explanations of appellee in regard to the issue of the ticket, refused to accept it, and thereupon expelled him from the car upon which, as shown, he was entitled to be carried. The mistake which the first conductor made in failing plainly to point out or indicate upon the transfer ticket the line to which appellee had requested to be transferred, in the eye of the law, must be considered as the mistake or fault of the appellant. And the latter must be treated or regarded as a wrongdoer in not honoring the ticket when it was presented by appellee to the second conductor and in expelling him from the car over his explanations in respect to the issue of the ticket. These explanations it should have accepted as true until the contrary was shown. It was certainly as much the duty of appellant to correct the mistake which it had made in punching the ticket in the first instance when the opportunity to do so was presented to it through the agency of the second conductor as would have been its duty to have rectified the same had the attention of the first conductor been called to the mistake by appellee before he left the College avenue car. Consequently there is no force or merit in the contention that he should have examined the transfer ticket which he received before leaving the car, and have presented it to the conductor who issued it, in order that the mistake made by him in punching the ticket might be corrected.

We have given the propositions presented in this appeal a patient consideration. All of them lead up to the single question, can the expulsion of appellee under the circumstances in this case be justified? As previously indicated we are constrained to answer this question in the negative.

Judgment affirmed.

Hadley, C. J., concurs with Jordan, J.; Dowling, J., concurs in the result; Monks and Gillett, JJ., dissent.

## On Petition for Rehearing.

Jordan, J.—Appellant, through its counsel, urges a rehearing in this case upon the claim that the decision is wrong, and that the court erred in basing its conclusion upon the assumption that there was upon the face of the transfer ticket an ambiguity. There is no ground apparent or real for the latter contention. What was said in our opinion in regard to the ticket herein involved, as it appeared in the record, being *prima facie* unintelligible to many persons, was merely asserted in answer to the contention of appellant's counsel that it was the duty of appellee to examine it when he received it, in order to discover if the conductor of the College avenue line had punched it in accordance with his request for a transfer; the argument being advanced apparently to the effect that his neglect to exercise such caution would, under the circumstances, defeat a recovery in this case. What the court held was that the ticket furnished to appellee by appellant, as shown, could not be regarded as conclusive evidence between the parties; that, under the circumstances, it was open to the explanations made by appellee at the time he presented it for passage to the conductor in charge of the Virginia avenue car in regard to the mistake or fault of appellant's agent in punching the ticket; that appellee's expulsion from the car over his explanations or statements in rela-

tion to the ticket was at the peril of appellant, in the event of its being unable to show that the same so made by him were false or untrue.   Or, in other words, under the circumstances in the case, the burden was upon it to prove the falsity of these explanations.   No attempt was made to establish at the trial that they were in any manner false. Appellant seemingly rested its case upon the claim which it made that the ticket in controversy was conclusive evidence between it and appellee of the contract in regard to the transfer, and that it was not open to his explanations in respect to the mistake made by its agent who issued the ticket to him, and that, on his refusal to pay the fare demanded by the conductor of the Virginia avenue car, his expulsion therefrom was justified.

We are not impressed with the insistence of counsel for appellant that it is the well-known disposition of many persons "to impose on public carriers whenever a safe opportunity arises," and that therefore in the future passengers over appellant's lines, relying on the rule affirmed in this case, will be enabled to overthrow the entire transfer system of the city, by means of fraudulent claims made in relation to transfer tickets.   A court ought not to hesitate to enforce the rule which we do in this case—a rule or principle which is so logically supported by many authorities— merely upon the assumption or naked assertion that some persons may be enabled thereby to perpetrate a fraud in the future.   Regard must be had for the legal rights of passengers as well as for those of public carriers; and all doubts in respect to the rights of the former are not, as counsel for appellant seemingly argue, to be solved against the passenger and in favor of the carrier.   In addition to the authorities cited in the original opinion to sustain our holding that the ticket in dispute did not afford conclusive evidence between appellant and appellee in respect to the contract of carriage or passage, we cite the following: *Louisville, etc., R. Co.* v. *Gaines*, 99 Ky. 411, 36 S. W.

174, 59 Am. St. 465; *Baltimore, etc., R. Co.* v. *Bambrey* (Pa.), 16 Atl. 67.

We are satisfied with and adhere to the decision in this appeal, and the petition for a rehearing is therefore overruled.

## DISSENTING OPINION.

GILLETT, J.—I find myself unable to agree with the result in this case, and with most of the views expressed in the opinion written by Jordan, J. The action, as disclosed by said opinion, is for tort, in ejecting appellee from a street car. It appears from the complaint, as well as the evidence, that he was ejected because he persisted in being carried upon a transfer ticket that did not purport to authorize him to ride on the car on which he had last taken passage.

The contract of appellant with the city provided that "the fare and transfer ticket shall entitle such passenger to ride upon said car upon which he has taken passage to the point where said line first intersects with the line to which such passenger desires to be transferred, which shall be plainly indicated on said transfer ticket, and after riding to said point of intersection such passenger may take passage on any car on the line indicated on his said transfer ticket, and on the surrender thereof to the conductor of such car shall be permitted to ride to the end of the last named line."

The evidence shows that appellee was a man of intelligence, who knew not only appellant's system of transferring in its outline, but who had specific knowledge of the fact, which was also indicated on the face of the ticket, that to entitle him to be carried on a transfer he must surrender to the conductor a transfer ticket that had the name of the line of cars to which he had transferred indicated by a punch in the space in the ticket in which such name was printed.

I desire to say at the outset that I think there is a clear distinction between this case and cases where the ticket is not insufficient on its face, or where it is ambiguous, or denotes the fact of a mistake upon a mere inspection of it, or where the traveler enters the train with a proper ticket that is afterwards taken up. The question in the case at bar is, can the appellee, under the circumstances of this case, maintain tort for being ejected from a car while insisting upon the right to ride upon a ticket that was palpably insufficient?

I agree with Jordan, J., that a transfer ticket is not a contract, but is a mere token. It is said by Mr. Wood in his work on railroads (2d ed.), 1634: "Tickets issued by a railway company to a passenger are *prima facie* evidence of a contract between the railway company and the passenger, to transport the latter and his personal baggage from the station named therein as the place of departure, to the station named therein as the place of destination." See, also, Thompson, Carriers of Passengers, 65; Fetter, Carriers of Passengers, 711, and cases there cited. Back of the ordinary ticket is the contract of the parties. There is a breach of that contract when the agent with whom it is made delivers a wrong token to the passenger. For the violation of that contract the carrier is liable for damages. The contract is to carry, and the damages are to be admeasured with that fact in view. Consequently the damages may in many cases be substantial, and include every element that might be recovered for in case of tort, saving damages for being ejected.

In *Hobbs* v. *London, etc., R. Co.*, 44 L. J. Q. B. 49, a case where the plaintiff had been negligently carried to the wrong station, Blackburn, J., said: "This is in reality an action on the contract. It is commonly called a duty, but it arises out of contract." In a subsequent portion of the opinion, in discussing the question of damages, it was said: "The question of remoteness is left in great

vagueness, and I can not bring myself much nearer to a definition, though perhaps it is made a little more definite by saying, that you may recover such damage as might be reasonably contemplated by the parties as likely to be the result of a breach of the contract between them. I think we can, without being able to define the line, very clearly see on which side of it each case is. I think the line must be left vague."

A rule requiring passengers who do not pay cash fare to manifest their right to be carried by the production of proper tokens is reasonable and valid. *Baltimore, etc., R. Co.* v. *Blocher,* 27 Md. 277; *Chicago, etc., R. Co.* v. *Boger,* 1 Ill. App. 472; *Pullman, etc., Co.* v. *Reed,* 75 Ill. 125, 20 Am. Rep. 232; *Frederick* v. *Marquette, etc., R. Co.,* 37 Mich. 342, 26 Am. Rep. 531; *Willetts* v. *Buffalo, etc., R. Co.,* 14 Barb. 585; *Hibbard* v. *New York, etc., R. Co.,* 15 N. Y. 455; *Townsend* v. *New York, etc., R. Co.,* 56 N. Y. 295, 15 Am. Rep. 419; *Downs* v. *New York, etc., R. Co.,* 36 Conn. 287, 4 Am. Rep. 77; *Shelton* v. *Lake Shore, etc., R. Co.,* 29 Ohio St. 214. Moreover, such rule is so general with carriers that it may be affirmed not only that those who deal with them must take notice of it, but that every person of average intelligence does know of it.

The rule, then, being reasonable, and one which the proposed traveler may be presumed to be advised of, it is pertinent to inquire, if the latter is deprived of the privilege of remaining upon the car, what was the inception of his right? Evidently it was the contract. What was the contract? That the carrier, for a consideration received, would transport the proposed traveler from one point to another, subject to the reasonable regulation that he should produce to the carrier's conductor the token of his right so to be transported. If the rule amounts to anything, it must become a component part of the contract. But if the passenger receives a wrong token? Then he may sue in contract for the breach in failing to deliver to him a proper

evidence of his right to ride, and thereby depriving him of such right. But if he sues in tort for being ejected, the carrier may answer: You should not, by virtue of the contract, have expected to continue upon the car after you were advised that you had not obtained a proper token. I did not contract to carry you unless you manifested to my conductor, in the manner that you knew that my rule provided for, that you had a right to be carried. It does not follow that the rule should yield and the passenger be permitted to remain upon the car, because the carrier was to blame in delivering a wrong token; for, whatever the fault of the carrier, the conductor is not in fault, and the carrier can not be charged with a tort committed by its servant unless the servant was also guilty of a tort.

As the rights of the parties had their inception in contract, and as the court can in almost every case completely recompense the plaintiff for the damages that flow from the breach, I am unable to see how the plaintiff could recover more than he might have recovered had he voluntarily left the car, by defying the rule and thereby inviting the very violence which forms the *gravamen* of his action, if he is permitted to sue for being ejected.

It is proper to look at the matter from a business point of view, the question arising as to which of two conflicting rights should yield. The rule is reasonable. Its universal adoption is the best vindication of its necessity. A carrier would be warranted in enforcing it, even if it were compelled occasionally to respond in damages for breach of contract, as the only means by which it could maintain a proper auditing department of passenger accounts, and yet keep trespassers innumerable off its carriages; but if it were compelled to respond in large sums for assault and battery, based on invited attacks, the burden cast upon the carrier would be great, and its injustice manifest.

Another reason for the enforcement of the doctrine I contend for is based on public policy, since the opposite

doctrine would affect and impair the rights of third par-
ties; but upon this subject I desire to let the authorities
speak.   The only rule that can reasonably be declared in
a case of this kind is that, for the time being—or, in other
words, as between the traveler and the conductor—the ticket
must be accepted as conclusive.   I now purpose to show
what is the law upon this subject by the authorities, and
the importance of the case, in my judgment, warrants me
in exhibiting to some extent the language used relative to
this question by courts and text-writers.

The leading case upon this subject is *Frederick* v. *Mar-
quette, etc., R. Co.,* 37 Mich. 342, 26 Am. Rep. 531.   The
court's opinion was written by Marston, J.   It was there
said:   "How, then, is the conductor to ascertain the con-
tract entered into between the passenger and the railroad
company where a ticket is purchased and presented to him?
Practically there are but two ways,—one, the evidence af-
forded by the ticket; the other, the statement of the pas-
senger contradicted by the ticket.   Which should govern?
In judicial investigations we appreciate the necessity of
an obligation of some kind and the benefit of a cross-ex-
amination.   At common law parties interested were not
competent witnesses, and even under our statute the wit-
ness is not permitted, in certain cases, to testify as to facts
which, if true, were equally within the knowledge of the
opposite party, and he can not be procured.   Yet here would
be an investigation as to the terms of a contract, where
no such safeguards could be thrown around it, and where
the conductor, at his peril, would have to accept of the
mere statement of the interested party.   I seriously doubt
the practical workings of such a method, except for the
purpose of encouraging and developing fraud and false-
hood, and I doubt if any system could be devised that would
so much tend to the disturbance and annoyance of the trav-
eling public generally.   There is but one rule which can
safely be tolerated with any decent regard to the rights of

railroad companies and passengers generally. As between the conductor and passenger, and the right of the latter to travel, the ticket produced must be conclusive evidence, and he must produce it when called upon, as the evidence of his right to the seat he claims. Where a passenger has purchased a ticket and the conductor does not carry him according to its terms, or, if the company, through the mistake of its agent, has given him the wrong ticket, so that he has been compelled to relinquish his seat, or pay his fare the second time in order to retain it, he would have a remedy against the company for a breach of the contract, but he would have to adopt a declaration differing essentially from the one resorted to in this case." Cooley, J., used language no less emphatic in *Hufford* v. *Grand Rapids, etc., R. Co.,* 53 Mich. 118, 18 N. W. 580. In *Keen* v. *Detroit Electric Railway,* 123 Mich. 247, 81 N. W. 1084—a transfer case to some extent like this—the court held that the plaintiff could not recover for the act of the conductor in ejecting him

One of the clearest decisions of the subject is *Bradshaw* v. *South Boston R. Co.,* 135 Mass. 407, 46 Am. Rep. 481. The action was for tort in expelling a person from a street car who insisted upon traveling on a wrong transfer that had been given him by mistake. In disposing of the case, the court said: "The conductor of a street railway car can not reasonably be required to take the mere word of a passenger that he is entitled to be carried by reason of having paid a fare to the conductor of another car; or even to receive and decide upon the verbal statements of others as to the fact. The conductor has other duties to perform, and it would often be impossible for him to ascertain and decide upon the right of the passenger, except in the usual, simple and direct way. The checks used upon the defendant's road were transferable, and a proper check, when given, might be lost or stolen, or delivered to some

other person.   It is no great hardship upon the passenger to put upon him the duty of seeing to it, in the first instance, that he receives and presents to the conductor the proper ticket or check; or, if he fails to do this, to leave him to his remedy against the company for a breach of its contract.   Otherwise, the conductor must investigate and determine the question, as best he can, while the car is on its passage.   The circumstances would not be favorable for a correct decision in a doubtful case.   A wrong decision in favor of the passenger would usually leave the company without remedy for the fare.   The passenger disappears at the end of the trip; and, even if it should be ascertained by subsequent inquiry that he had obtained his passage fraudulently, the legal remedy against him would be futile. A railroad company is not expected to give credit for the payment of a single fare.   A wrong decision against the passenger, on the other hand, would subject the company to liability in an action at law, and perhaps with substantial damages.   The practical result would be, either that the railroad company would find itself obliged in common prudence to carry every passenger who should claim a right to ride in its cars, and thus to submit to frequent frauds, or else, in order to avoid this wrong, to make such stringent rules as greatly to incommode the public, and deprive them of the facilities of transfer from one line to another which they now enjoy.   It is a reasonable practice to require a passenger to pay his fare, or to show a ticket, check, or pass; and, in view of the difficulties above alluded to, it would be unreasonable to hold that a passenger, without such evidence of his right to be carried, might forcibly retain his seat in a car, upon his mere statement that he is entitled to a passage.   If the company has agreed to furnish him with a proper ticket, and has failed to do so, he is not at liberty to assert and maintain by force his rights under that contract; but he is bound to yield, for the time being, to the reasonable practice and requirements

of the company, and enforce his rights in a more appro-
priate way.  It is easy to perceive that in a moment of
irritation and excitement it may be unpleasannt to a pas-
senger who has once paid to submit to an additional exac-
tion.  But, unless the law holds him to do this, there arises
at once a conflict of rights.  His right to transportation
is no greater than the right and duty of the conductor to
enforce reasonable rules, and to conform to reasonable and
settled customs and practices, in order to prevent the com-
pany from being defrauded; and a forcible collision might
ensue.  The two supposed rights are in fact inconsistent
with each other.  If the passenger has an absolute right
to be carried, the conductor can have no right to require
the production of a ticket or the payment of fare.  It is
more reasonable to hold that, for the time being, the pas-
senger must bear the burden which results from his failure
to have a proper ticket.  It follows that the plaintiff was
where he had no right to be, after his refusal to pay a
fare, and that he might properly be ejected from the car.
This decision is in accordance with the principle of the
decisions in several other states, as shown by the cases cited
for the defendant; and no case has been brought to our
attention holding the contrary."

*Townsend* v. *New York, etc., R. Co.,* 56 N. Y. 295, 15
Am. Rep. 419, is a case somewhat different from this in
its facts, but which strongly points out some of the prac-
tical reasons why a passenger can not recover for being
ejected if he is without a proper ticket.  In that case the
plaintiff's ticket had been wrongfully taken from him by
the first conductor, and he was seeking to travel upon his
explanation.  The conductor notified him that he must pay
his fare or leave the train.  The court said: "If, after
this notice, he waits for the application of force to remove
him, he does so in his own wrong; he invites the use of
the force necessary to remove him; and if no more is ap-
plied than is necessary to effect the object, he can neither

recover against the conductor or company therefor. This is the rule deducible from the analogies of the law. No one has a right to resort to force to compel the performance of a contract made with him by another. He must avail himself of the remedies the law provides in such case. This rule will prevent breaches of the peace instead of producing them; it will leave the company responsible for the wrong done by its servant without aggravating it by a liability to pay thousands of dollars for injuries received by an assault and battery, caused by the faithful efforts of its servants to enforce its lawful regulations."

The element of the public interest is particularly brought out in *Pennsylvania R. Co.* v. *Connell*, 112 Ill. 295, 304, 306, 54 Am. Rep. 238. "Had appellee paid the fare demanded," said the court in that case, "he might have sued the company and recovered for a breach of the contract. Had he left the train when the conductor refused to receive the ticket and ordered him to leave, he might have sued and recovered for all damages sustained in consequence of the act of the conductor expelling him from the train. * * * A train crowded with passengers—often women and children—is no place for a quarrel or a fight between a conductor and a passenger, and it would be unwise, and dangerous to the traveling public, to adopt any rule which might encourage a resort to violence on a train of cars."

A case containing somewhat the same course of reasoning is *Southern, etc., R. Co.* v. *Rice*, 38 Kan. 398, 403, 16 Pac. 817, 5 Am. St. 766, where it was said: "For any breach of contract or gross negligence on the part of the conductor or other employes of a railroad company, redress must be sought in the courts, rather than by the strong arm of the person who thinks himself about to be deprived of his rights. A passenger should not be permitted to invite a wrong and then complain of it."

Where a traveler, who desired to stop en route, had asked for a stop-over check, but by mistake was given a trip check, it was held by the supreme court of Wisconsin that he was not entitled to ride upon another train upon presenting the trip check and making the explanation. In the course of the opinion it was said by the court: "Here, the plaintiff was not entitled, upon anything he showed the second conductor, to ride on his train. That conductor, therefore, had the lawful right to eject him from it; nay, he was bound to do so, in obedience to the reasonable rules of the company, which required a passenger to obtain from his conductor a stop-over check when he desired to stop before reaching the place to which he had purchased a ticket; and the mistake or fault of the conductor in not giving him, on request, such a check would not give him a lawful right to ride on the second train, though he might recover damages against the company for the wrongful act of the first conductor." *Yorton v. Milwaukee, etc., R. Co.,* 54 Wis. 234, 11 N. W. 482, 41 Am. Rep. 23.

In Minnesota it was declared that, "If the passenger accepts a transfer plainly marked for a particular line, he is not entitled to take a car of another and different line." *Pine v. St. Paul City R. Co.,* 50 Minn. 144, 148, 52 N. W. 392, 16 L. R. A. 347.

*McKay v. Ohio River R. Co.,* 34 W. Va. 65, 9 L. R. A. 132, 26 Am. St. 913, 11 S. E. 737, is a case which clearly indicates that the traveler can only maintain tort if he is ejected while rightfully upon the train in view of the company's rule that a proper token must be produced. I therefore quote from the case: "Here the plaintiff had a ticket not good for the trip he was making, and declined to pay fare. He can not maintain an action for ejection or a threatened ejection from the train, but must look to the breach of contract, or the act of receiving money for the round trip and giving a wrong ticket. If the passenger have a ticket good for the passage, and the con-

ductor should refuse to recognize it, and expel the passenger, the act would be a tort; and an action as for a tort could be maintained. Judge Cooley said in *Hufford* v. *Grand Rapids, etc., R. Co.,* 53 Mich. 118, 18 N. W. 580, that all the judges of the Michigan supreme court agreed that if the ticket was apparently good the passenger need not leave the car. But here the ticket was very apparently not good. Therefore the motion of the defendant to reject plaintiff's evidence as not sustaining his action should have been sustained, not overruled."

In *Peabody* v. *Oregon R., etc., Co.,* 21 Or. 121, 133, 26 Pac. 1053, 12 L. R. A. 823, where the plaintiff had produced an unstamped ticket and sued for being ejected, Lord, J., speaking for that court, after a careful review of the authorities, said: "It seems to us that the weight of authority and reason as applicable to the facts as disclosed by the record, is that it is the duty of the passenger to pay his fare or quietly leave the train when requested, if he has not the proper ticket, and resort to his appropriate remedy for the damages he has sustained."

In *Mosher* v. *St. Louis, etc., R. Co.,* 127 U. S. 390, 396, 8 Sup. Ct. 1324, 32 L. Ed. 249, the ticket was a contract, rather than a token, but the language used and the authorities cited, show that the Supreme Court of the United States is in accord with the cases from which I have quoted. It was there said: "The conductor of the defendant's train, upon the plaintiff's presenting a ticket bearing no stamp of the agent at Hot Springs, had no authority to waive any condition of the contract, to dispense with the want of such stamp, to inquire into the previous circumstances, or to permit him to travel on the train. It would be inconsistent alike with the express terms of the contract of the parties, and with the proper performance of the duties of the conductor, in examining the tickets of other passengers, and in conducting his train with due regard to speed and safety, that he should undertake to determine,

from oral statements of the passenger or other evidence, facts alleged to have taken place before the beginning of the return trip, and as to which the contract on the face of the ticket made the stamp of the agent of the Hot Springs Railroad Company at Hot Springs the only and conclusive proof. The necessary conclusion is that the plaintiff can not maintain this action against the defendant for the act of its conductor in putting him off the train. *Townsend* v. *New York, etc., R. Co.,* 56 N. Y. 295; *Shelton* v. *Lake Shore, etc., R. Co.,* 29 Ohio St. 214; *Frederick* v. *Marquette, etc., R. Co.,* 37 Mich. 342; *Bradshaw* v. *South Boston R. Co.,* 135 Mass. 407; *Murdock* v. *Boston, etc., R. Co.,* 137 Mass. 293, 299; *Louisville, etc., R. Co.* v. *Fleming,* 14 Lea (Tenn.) 128."

Space will not permit a further quotation from the cases, but I cite as in point upon the proposition that the ticket is conclusive for the time being: *Dixon* v. *New England R. Co.,* 179 Mass. 242, 60 N. E. 581; *New York, etc., R. Co.* v. *Bennett,* 1 C. C. A. 544, 50 Fed. 496; *Poulin* v. *Canadian Pac. R. Co.,* 3 C. C. A. 23, 52 Fed. 197, 17 L. R. A. 800; *Chicago, etc., R. Co.* v. *Griffin,* 68 Ill. 499; *Thorp* v. *Concord R. Co.,* 61 Vt. 378, 17 Atl. 791; *West Maryland R. Co.* v. *Stocksdale,* 83 Md. 245, 34 Atl. 880; *McGhee* v. *Reynolds,* 117 Ala. 413, 23 South. 68; *Woods* v. *Metropolitan St. R. Co.,* 48 Mo. App. 125.

I must, however, give space to a few quotations from textwriters. Mr. Hutchinson in his work on carriers (2d ed.), §580h, says: "So where the passenger, having paid fare to the point of destination, is, by the mistake of the company's agent, furnished with a ticket which upon its face entitles him to a ride only to a point short of his destination, or the like, the passenger, having accepted the ticket, can not insist on riding upon that ticket beyond the point to which by its terms it entitles him. He must therefore pay fare to his destination or get off and continue his journey by other means, and, if he refuses, the conductor may eject him;

but he may recover of the carrier damages for the injury he has sustained by reason of its breach of contract. Here, too, however, the action will be for the breach of the contract, and not for the ejection. And he may not aggravate his injury by resisting ejection under otherwise proper conditions. There is in these cases an element of negligence in the passenger in not seeing that he obtains and presents a ticket which is at least apparently regular."

Judge Freeman, the learned annotator, in the course of a long note on carriers' rules and tickets, says: "Although the cases on this subject are not entirely consistent with each other, the doctrine deducible from them, and the correct doctrine as it seems to us, is that when one has paid his fare to a certain destination on a railway, to the officer appointed by the company to receive it, the contract for carriage is complete, and he has a right to be carried in accordance with that contract, which can not be infringed or impaired by any rule of the company or by any mistake or default of its servants. If by a mistake of one of the officers of the company he is not furnished with a proper ticket or check evidencing his right to be carried to his destination, his right nevertheless remains, and if for want of the requisite evidence of that right, another servant of the company refuses to carry him without another payment of fare, the contract is broken, and he has a complete right of action for all damages resulting from such breach. But as the rule requiring him to show a proper ticket or to pay his fare, if demanded, is a reasonable one, he will not be justified in refusing compliance with it, and in remaining in the car until forcibly expelled, merely for the purpose of heaping up damages. He should either pay the fare demanded or quit the train; and in either case we think he ought to recover, as a part of his damages, reasonable compensation for the indignity put upon him by the company through the default of its servant. But he can add nothing to his claim by remaining in the car until

forcibly ejected, for the rule under which he is ejected, being reasonable, is a complete protection to the company and its servants against the recovery of any damages, directly or indirectly, for an assault made necessary by his own obstinacy, if no more violence than is required for his ejection is used. Such a case stands upon an entirely different ground from that of a passenger who has a proper ticket and is nevertheless expelled." 41 Am. Dec. 475.

In Elliott, Railroads, §1594, the authors say: "Whether the action be in contract or in tort, for the breach of a contract or for the violation of a duty imposed by law, the gist of the action can not well be the expulsion of the traveler, where there is no unnecessary force, in accordance with the rules of the company, where he has no ticket or evidence of his right to transportation valid on its face or such as the rules reasonably require, and refuses to pay his fare. The wrong lies back of that, and it is well settled that a complaint proceeding upon one theory will not authorize a recovery upon another and entirely distinct and independent theory."

I shall now examine the cases decided by this court that are cited by Jordan, J. *Pittsburgh, etc., R. Co.* v. *Hennigh,* 39 Ind. 509, is not in point, because the plaintiff in that case had a proper ticket, of which he was deprived by a conductor while en route. In *Toledo, etc., R. Co.* v. *McDonough,* 53 Ind. 289, the plaintiff had, by the direction of the conductor of a mixed train on which he was riding, taken passage, in the same direction, on a passenger-train, and had presented a card, given him by said conductor, that had written upon it the number of the station to which the plaintiff was traveling and the initials of such conductor. It was held that the answers of the jury to interrogatories were not in conflict with the general verdict, as the jury might have found that the first conductor had assured the plaintiff that the card was a sufficient ticket. The case can be disposed of on the theory that the plaintiff

had a token that purported to be sufficient.   The cases of *Lake Erie, etc., R. Co.* v. *Fix,* 88 Ind. 381, 45 Am. Rep. 464, and *Pennsylvania Co.* v. *Bray,* 125 Ind. 229, are cases where travelers were seeking to return on going coupons, the return coupons having been wrongfully detached.   In the Fix case, the court distinguished the cases of *Chicago, etc., R. Co.* v. *Griffin,* 68 Ill. 499, *Frederick* v. *Marquette, etc., R. Co.,* 37 Mich 342, 26 Am. Rep. 531, and *Townsend* v. *New York, etc., R. Co.,* 56 N. Y. 295, 15 Am. Rep. 419, as cases where the ticket agent had given the passenger a ticket to the wrong station, and stated that in the case before the court the passenger "was not without evidence of his right to transportation."   In the Bray case, which was decided by a divided court, it was said that as the rule was a mere technical one, the first conductor had a right to and did waive it by taking up the return coupon. There would be something of reason in the position that the possession of the going coupon was *prima facie* evidence of a mistake, since it would appear that the company had not discharged its entire obligation to the passenger.   There would be still more of reason in the position that the conduct of the first conductor was calculated to lead the traveler to suppose that it was a matter of indifference to the company on which coupon he journeyed, thereby leading him to contest the right to eject him.   That the latter view must have to some extent influenced the court is evidenced by the fact that in the intermediate case of *Godfrey* v. *Ohio, etc., R. Co.,* 116 Ind. 30, it was held that a person who entered a railroad train with knowledge that he had the wrong coupon of a round-trip ticket, and refused to pay fare, was properly ejected.   In disposing of the case the court said: "Railroad companies have the undoubted right to make reasonable regulations for the conduct of their business.   It is certainly a reasonable requirement that a passenger, having the opportunity, should purchase his ticket to the place of his destination, and not in the oppo-

site direction.   To compel railroad companies to receive unused tickets, without regard to the direction which the holder wishes to go, would introduce inextricable confusion into their business, and be of no benefit to any person possessed of sufficient intelligence to go upon a train." I am not prepared to say that the cases of *Lake Erie, etc., R. Co.* v. *Fix, supra,* and *Pennsylvania Co.* v. *Bray, supra,* were decided correctly.   However, the Bray case rests largely on the Fix case, and I contend that the latter case shall not now be treated as a precedent for the case at bar, since the Fix case expressly distinguishes the class of cases to which this one belongs.

As to the cases cited by Jordan, J., from without this State:   In *New York, etc., R. Co.* v. *Winters,* 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71, *Murdock* v. *Boston, etc., R. Co.,* 137 Mass. 293, 50 Am. Rep. 307, *Ray* v. *Courtland, etc., Traction Co.,* 46 N. Y. Supp. 521, *Ellsworth* v. *Chicago, etc., R. Co.,* 95 Iowa 98, 63 N. W. 584, 29 L. R. A. 173, *Philadelphia, etc., R. Co.* v. *Rice,* 64 Md. 63, 21 Atl. 97, and *Hufford* v. *Grand Rapids, etc., R. Co.,* 64 Mich. 63, 31 N. W. 544, 8 Am. St. 859, the tickets were good on their face.   Of the latter case it was said in *Heffron* v. *Detroit City R. Co.,* 92 Mich. 406, 411, 52 N. W. 802, 16 L. R. A. 345, 31 Am. St. 601: "The case of *Hufford* v. *Grand Rapids, etc., R. Co.,* 64 Mich. 631, is distinguishable in this:   There the ticket was one purporting, on its face, to cover the distance to be traveled by Hufford.   He paid the usual fare between the two places, and the ticket contained no printed exceptions or conditions restricting Hufford from using it at the time he presented it to the conductor.   Its infirmity, if any, was not open to Hufford's plain observation, so that he was informed on its face that it was not good." In *Trice* v. *Chesapeake, etc., R. Co.,* 40 W. Va. 271, 21 S. E. 1022, the court expressly affirmed the case of *McKay* v. *Ohio River R. Co.,* 34 W. Va. 65, 11 S. E. 737, 9

L. R. A. 132, 26 Am. St. 913, the court adding that "the passenger could not ask passage where the ticket did not carry him." *Jenkins* v. *Brooklyn Heights R. Co.*, 51 N. Y. Supp. 216, turned on the ruling that a regulation was unreasonable. *Eddy* v. *Syracuse, etc., R. Co.*, 63 N. Y. Supp. 645, while it affirms the right to sue in tort, does not have in it the element of an assault and battery, as the plaintiff voluntarily left the car. The same may be said of *Yorton* v. *Milwaukee, etc., R. Co.*, 62 Wis. 367, 21 N. W. 516, 23 N. W. 401. In *Appleby* v. *St. Paul City R. Co.*, 54 Minn. 169, 55 N. W. 1117, 40 Am. St. 308, the facts were that the street car on which the plaintiff was riding was taken off, the conductor disappeared, without giving plaintiff a transfer, and an agent of the company directed him to take the next car. The case was decided on the ground that, as it was the duty of the company to provide for such an emergency, the plaintiff had a right to rely on the direction of such agent. The case of *Kansas City, etc., R. Co.* v. *Riley*, 68 Miss. 765, 9 South. 443, 13 L. R. A. 38, 24 Am. St. 309, was decided upon facts analogous to the case of *Lake Erie, etc., R. Co.* v. *Fix*, 88 Ind. 381, 45 Am. Rep. 464, and can not be said to be in point either way. In *Laird* v. *Pittsburg Traction Co.*, 166 Pa. St. 4, 31 Atl. 51, the ticket was ambiguous.

As shown above, there are some cases affirming the right to sue in tort that do not recognize the right to resist the conductor. As to the latter proposition, the Ninth Circuit Court of Appeals, and the courts of Maine, Texas, Arkansas, Georgia, Washington, and Tennessee, of the cases cited by Jordan, J., support his view, while, to recapitulate, the Supreme Court of the United States, the Sixth Circuit Court of Appeals, and the courts of New York, Massachusetts, West Virginia, Michigan, Illinois, Vermont, Maryland, Missouri, Kansas, Minnesota, Oregon, and Alabama uphold the position that there can be no recovery for the ejection. I admit, that the question as to the right

to sue in tort is more in doubt upon the authorities, but in my judgment the suit should be on the contract. I think that the judgment should be reversed, with a direction to the court below to sustain the demurrer to the complaint.

Monks, J., concurs in the above opinion.