# CHICAGO AND ERIE RAILROAD COMPANY *v.* MURPHY.

[No. 7,920. Filed May 14, 1913. Transfer denied November 18, 1913.]

1. RAILROADS.—*Injury to Animals on Track.—Actions.—Evidence. —Sufficiency.*—In an action against a railroad company for the killing of horses on its tracks, where the only controverted fact was as to the place where the horses escaped from plaintiff's premises onto the tracks, evidence showing that the fence along the right of way was in a very defective condition, that horse tracks were seen leading from a low place in the fence for a distance of thirty or forty rods on the right of way towards the place where the horses were killed, and that, although a crossing gate maintained by plaintiff was also defective, it was closed and there were no tracks or marks of any kind to indicate that the horses had escaped at that point, was sufficient to support a finding that they entered upon defendant's right of way at a point where its fence was insufficient to keep stock off its tracks. p. 533.

2. RAILROADS.—*Injury to Animals on Track.—Evidence.—Verdict. —Conclusiveness.*—Although the evidence, in an action against a railroad company for killing plaintiff's horses upon its track, was contradictory and indirect as to the exact place where the horses escaped upon the track, a verdict for plaintiff, amounting to a finding that the right of way was not securely fenced within the meaning of §5447 Burns 1908, Acts 1885 p. 224, is conclusive, where the evidence favorable to plaintiff reasonably justified the inference that the horses entered upon the right of way through defendant's defective fence. p. 535.

3. APPEAL.— *Review.— Evidence.— Verdict.—* Where there is any evidence, however slight, to support the conclusion reached by a jury, its verdict will not be disturbed on appeal on the ground of insufficient evidence. p. 535.

4. TRIAL. — *Instructions. — Duty to Write Instructions. —* Under subd. 5, §558 Burns 1908, it is the duty of the court to give to the jury general instructions, which shall be in writing, so that where a court instructs partly in writing, and partly by reading a section of the statute, which was not embodied in the written instructions given, such action is erroneous as not being in compliance with the requirement that the instructions must be in writing. p. 536.

5. APPEAL.—*Review.—Harmless Error.—Instructions.*—Error, consisting of the court's failure to reduce all its instructions to writing, is not cause for reversal where it appears that the appellant was not harmed and that the verdict would have been the same, had all the instructions been in writing. p. 536.

6. APPEAL.—*Review.*—*Harmless Error.*—*Refusal of Instructions.*— There is no reversible error in the refusal of requested instructions, where those given fully covered the issues involved.    p. 537.

7. APPEAL.—*Review.*—*Disposition of Cause.*—*Affirmance.*—Unless there is manifest error in the record, which has prevented the accomplishment of substantial justice, the court on appeal will not award a new trial, and intervening errors will be disregarded where it appears from the whole record that the merits of the cause have been fairly tried and determined and a correct result attained.    p. 538.

From Blackford Circuit Court; *Charles E. Sturgis,* Judge.

Action by Abigail Murphy against the Chicago and Erie Railroad Company. From a judgment for plaintiff, the defendant appeals.    *Affirmed.*

*W. O. Johnson* and *Eichhorn & Vaughn,* for appellant.

*Merriman & Dailey, Waltz & Emshwiller* and *Leffler, Ball & Needham,* for appellee.

IBACH, C. J.—This action was brought to recover from appellant the value of two horses owned by appellee and which she avers strayed upon appellant's railroad tracks through a defective fence along its right of way through her farm, and were killed by one of appellant's trains.    The complaint originally filed was in three paragraphs, all of which, except the first, were dismissed by appellee after the evidence was introduced.    Separate demurrers to each paragraph of complaint were overruled.    Upon issues formed by the complaint and an answer in general denial there was a jury trial, which resulted in a verdict and judgment in favor of appellee in the sum of $400.    With the general verdict the jury returned answers to twenty interrogatories.

The only error assigned which has not been waived by failure to discuss it, is the court's action in overruling appellant's motion for a new trial.    The questions discussed by appellant under this motion are the sufficiency of the evidence to sustain the verdict and the court's refusal to give certain instructions to the jury.

It was agreed by the parties that the defendant was on September 22, 1906, and for some time prior and subsequent thereto and at the time that the horses in controversy were killed, an incorporated railroad company, and was operating a line of railroad through Wells County, Indiana, and through the farm of plaintiff in said county, and that on the evening of September 22, 1906, one of the locomotives of said railroad company struck and killed the two horses belonging to the plaintiff described in the complaint, and that said horses were of the value of $400. The further evidence discloses that at some time between 9 o'clock on Saturday night and 9 o'clock Sunday morning of September 22 and 23, 1906, the two horses killed entered upon appellant's tracks and right of way from a pasture field adjoining the right of way and belonging to appellee. It appeared that some of the posts of the fence along the right of way had been burned off, and staples supporting the wires had pulled out, the wires sagged, and in many places the fence did not exceed two and a half feet in height. Sticks had been placed to hold the wires up. Mr. Murphy, husband of appellee, testified that on Sunday evening he tracked the horses from the low place in the fence through the tall grass on the right of way a distance of thirty or forty rods to the east towards the place where they were killed. A gate at a private crossing, which composed a part of the fence, was closed on Saturday morning by the witness Sewards, and nothing appears in the evidence tending to show that the gate had been opened from that time until after the horses were found dead. Two witnesses testified that they saw the gate about 9 o'clock Sunday morning, and it was then closed. It was a slide gate, which slid to the west between posts and opened to the south into the pasture. There was some evidence which tended to show that this gate was defective, that is, when the gate was closed, so that at the bottom it was between the posts, the top portion of the gate would not be between the posts, "but leaned outward," and that was

its condition when the two witnesses saw it and testified it was closed, that is, it was closed as best it could be in view of its condition. Mr. Murphy also testified that he saw the gate about 9 o'clock Sunday morning, and it was closed, and that he saw no horse tracks about it. It is also shown in the evidence that the horses each weighed about 1,400 pounds, and to escape from the field through the gate after being closed as described by the witness, the horses would have had to push against it to the north, or the opposite way to that in which it was arranged to be opened. The gate was not broken down, neither were any of the boards in it split, "nor were there any hairs on the gate." It also appears that appellee and her husband went to church on Saturday evening about 7 o'clock, and on passing the field saw the horses standing in the northwest corner of the field, near the insecure fence. The gate was in the northeast corner of the field. About two hours later, while in church, they heard the danger whistle of appellant's engine. Appellant's section men testified at the trial, but were not interrogated as to the condition of the fence, so that the evidence as to its condition is entirely uncontradicted, and stands practically admitted by appellant. One of the section men testified that at about 8 o'clock Sunday morning but after the horses were found dead, he passed by the gate referred to and that it was then open, but we are of the opinion that there was ample evidence introduced at the trial which would justify the jury in finding that the fence was defective and that the horses entered upon appellant's right of way at the point where the fence was insufficient to keep stock off of the railroad.

The jury in answer to interrogatory No. 16 said that the gate at the farm crossing above referred to, did not lean away from the posts at the time of the accident so that it left a space more than two feet wide at the top, and in answer to interrogatory No. 18 that the horses could not have passed through the gate onto the right of way at that

time.    Interrogatory No. 19 is as follows: "Q.    Did plaintiff's horses escape from her pasture field on to defendant's right of way and railroad on September 22, 1906, through the farm crossing gate which was in the line of right of way fence at the northeast corner of the pasture field?    A.    No." Interrogatory No. 20.    "Q.    If you say 'No' in answer to interrogatory 19 then where did plaintiff's horses escape from her pasture field onto the right of way of the defendant on the evening of September 22, 1906?    A.    Over the wire fence."

The jury by its general verdict found that the railroad was not securely fenced within the meaning and spirit of §5447 Burns 1908, Acts 1885 p. 224.    By its general

2.    verdict and the answers to interrogatories it found that the horses escaped from the field onto the track of appellant over the wire fence, and not through the gate. While the evidence is in some respects contradictory and indirect as to the exact place at which the horses escaped from the field, yet it is of such a character and tends to prove such facts that the jury could have very reasonably inferred from the evidence favorable to appellee that the horses entered upon the right of way through the defendant's defective fence.    In the case of *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470, 485, 73 N. E. 990, the court said: "where under the facts and circumstances, there is room for two inferences to arise in regard to the ultimate facts of the defendant's negligence, the jury having drawn one on that issue in favor of the plaintiff, such inference will be accepted by this court as conclusive."    In cases of this character, often and perhaps usually there are no actual

3.    eye witnesses and the place of escape must be shown by the circumstances such as the condition of the fence, presence of the tracks of horses leading from such defective place, the absence of tracks at other defective places, and with all the evidence before it, the jury must determine its weight and force, and if there is any evidence,

however slight, that will support the conclusion thus reached, the court on appeal will not disturb the verdict.

One reason assigned for a new trial is that the court erred in refusing to instruct the jury in writing. It is argued that the court at the proper time was requested by appellant to instruct the jury in writing only, and that instead instructions were given partly in writing and partly orally, in that the court read to the jury a section of the statute which was not embodied in the written instructions given. Subd. 5 §558 Burns 1908, §533 R. S. 1881, provides "When the argument of the cause is concluded, the court shall give general instructions to the jury, which shall be in writing," etc. Among the more recent cases in this State in which a similar question was discussed is *Sellers* v. *City of Greencastle* (1893), 134 Ind. 645, 34 N. E. 534. In that case Howard, J., speaking for the court says, "Appellee contends that it is not a violation of this statute to read to the jury from the statute of the State as part of an instruction, while the remainder of the instruction is written, that such reading is not oral instruction. We think that the authorities are against the position taken by appellee". To support this conclusion he cites a number of other cases previously determined by the Supreme Court, and they are all clearly in point, so that there can be no doubt but that the trial court did err in reading from the statute the section thereof referred to, instead of copying the same among and giving it as a part of its written instructions. In other words, it committed error in refusing to give all of its instructions in writing after a proper request had been made that they all be so given.

The question then remains, was such error harmful to the appellant? If it affirmatively appears from the record that such error was harmless to appellant, the cause will not be reversed. A careful examination of the entire record reveals the fact that there was in reality but one material question in dispute at the trial, and that was

whether the horses escaped from the enclosure through a deficient right of way fence which it was the duty of appellant to maintain, or whether they escaped through a private gate of appellee, although in the same line of fence, which the railroad company was not by law required to keep closed, but which the law required should be kept closed by the owner of the farm crossing in the absence of a contract or agreement to the contrary. No such agreement changing this responsibility from the owner of the land to the railroad company is shown in evidence. There was absolutely no conflict as to the duty of the railroad company to maintain the fence along its right of way, apart from the gate, and no conflict as to the fact that the fence was defective. The single point in issue was the place where the horses escaped. The trial throughout proceeded upon such theory. It is quite apparent from all that transpired at the trial that the jury was well informed and fully understood, before any instructions were given, what duties devolved upon appellant with reference to the right of way fence, and what was required of appellee concerning the maintenance of the private gate. We therefore entertain no doubt but that the same verdict would have been returned by the jury whether the section were read from the volume of the statute or copied by the court and read to it, so that no harm came to appellant by reason of this error on the part of the trial court. The result reached by the court and jury in holding that the fence was deficient was the only one which could have been properly reached from the evidence, and there was sufficient evidence to justify them in holding that the horses escaped through the defective fence. Error is also assigned in

6. refusing to give certain instructions, but we believe that the jury was fully instructed upon the issues of the case by the instructions given, and that the court did not err in refusing to give any of the instructions requested by appellant which were not given.

The rule is well established and understood that appellate

courts will not grant new trials unless there is manifest error in the record, which has prevented the accom-

7. plishment of substantial justice, also when it appears from the entire record that the merits of the cause have been fairly tried and determined, and the result reached at the trial was correct, intervening error will be disregarded. §700 Burns 1908, §658 R. S. 1881; §407 Burns 1908, §398 R. S. 1881. No reversible error appearing, the judgment is affirmed.

NOTE.—Reported in 101 N. E. 829. See, also, under (1) 33 Cyc. 1294; (2) 33 Cyc. 1324; (3) 3 Cyc. 348; (4) 38 Cyc. 1764, 1765; (5) 38 Cyc. 1764; (6) 38 Cyc. 1711; (7) 3 Cyc. 418, 443. As to duty of railroad toward animal on track, see 49 Am. Dec. 261; 96 Am. Dec. 681; 20 Am. St. 161.